495 So.2d 1210 (1986)
RICHARDS ENTERPRISES, Inc., Appellant,
v.
Herbert R. SWOFFORD, and Herbert R. Swofford, P.A., Appellees.
No. 85-1248.
District Court of Appeal of Florida, Fifth District.
October 2, 1986.
Jeffrey A. Icardi, of Icardi Law Offices, P.A., Winter Park, for appellant.
Herbert R. Swofford, Orlando, for appellees.
UPCHURCH, Chief Judge.
Richards Enterprises, Inc., appeals an order dismissing its cause of action against attorney Herbert Swofford and Herbert Swofford, P.A. Richards argues that the trial court erred in holding that its claim for legal malpractice was barred by the applicable two-year statute of limitations. We agree and reverse.
Swofford was retained to represent Richards and to prepare closing documents which included a note and mortgage in a real property transaction. He was also retained to foreclose the mortgage. The foreclosure was decided adversely to Richards, the trial court finding that the original transaction was fraudulently induced. Richards obtained substitute counsel who filed a motion for new trial. On December 22, 1981, the motion was denied. The order was affirmed on appeal by this court on April 20, 1983.
On April 19, 1985, Richards filed a complaint for legal malpractice against Swofford. Swofford moved to dismiss, contending in part that the action was barred by the statute of limitations. The motion was *1211 granted and the case dismissed by the trial court on the basis that the statute of limitations began to run on December 22, 1981, the date of the denial of the motion for new trial in the mortgage foreclosure action as that was the date any cause of action was "discovered or should have been discovered with the exercise of due diligence." See Birnholz v. Blake, 399 So.2d 375 (Fla. 3d DCA 1981).
In Adams v. Sommers, 475 So.2d 279 (Fla. 5th DCA 1985), we reversed a summary final judgment in favor of an attorney in a legal malpractice action. There we held that the two year statute of limitations did not begin to run until the decision adverse to the client (which was the subject of the malpractice action) was appealed to this court, a decision was rendered and no further action was taken. Our decision was based on the premise that had the lower court's ruling been reversed, the client would not have had a cause of action for malpractice on that ground.
In the present case, Richards' motion for new trial was denied on December 22, 1981. However, that decision was appealed and had this court reversed that decision, Richards' mortgage foreclosure claim would have been viable and Richards would not have had a malpractice action based on that ground.
In Kelley v. School Board of Seminole County, 435 So.2d 804 (Fla. 1983), a case relied on by the dissent, the defective roof was apparent. There the Florida Supreme Court held that the efforts of the architect and the contractor to repair or cure the defects did not toll the statute. Here, unlike Kelley, Swofford had been retained to prepare and subsequently to foreclose a mortgage. There was no "leaking water" to reveal the defect. The validity or invalidity of the mortgage and Swofford's work in preparing it were to be tested by its enforceability. If the appellate court had found that the court erred in refusing foreclosure, Swofford would not have been negligent. Hence, no cause of action for malpractice existed at the time of the judgment denying foreclosure and the statute of limitations did not begin to run from December 22, 1981.
REVERSED and REMANDED for further proceedings.
SHARP, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
In this case an attorney, appellee Swofford, represented a client, appellant Richards Enterprises, as seller, in the sale of a business and prepared a bill of sale and a purchase money note and mortgage in favor of his client. Later when the purchaser (Gokel) did not pay the purchase money note attorney Swofford filed an action to foreclose the purchase money mortgage. In the mortgage foreclosure action, the purchaser counterclaimed for rescission of the sale on the ground that the seller (Richards) induced the sale by fraudulent misrepresentations. The trial court rescinded the sale and voided the purchase money mortgage by a final judgment dated December 1, 1981. Immediately after the trial and adverse result, the client discharged attorney Swofford and retained new counsel who moved for a new trial, then appealed a denial of the motion for a new trial, which denial was affirmed by this court on April 20, 1983.[1] On April 19, 1985, the client, Richards, filed a legal malpractice action against attorney Swofford, alleging negligence in the preparation of the original bill of sale, mortgage, and note and negligence in trial of the mortgage foreclosure action. Attorney Swofford moved to dismiss the malpractice action on the ground that it appeared from the complaint, as a matter of law, that the applicable two year statute of limitations (§ 95.11(4)(a), Fla. Stat.) had run. The trial court dismissed the malpractice action and the client appeals.
A cause of action is the legal right in a plaintiff to recover judgment against a defendant whose breach of a duty owed the plaintiff has caused the plaintiff injury or damage for which the law provides a remedy. *1212 Such a cause of action comes into existence, or accrues, whenever the necessary predicate facts have occurred and continues in existence for a period of time which is limited by law in statutes of limitations. Statutes of limitations are not simply technicalities. They are as fundamental to a well-ordered judicial system as they are to any economic system that requires predictability. Board of Regents v. Tomanio, 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440, 449 (1980). These statutes prevent the very real danger of unfairness to defendants who are faced with stale claims after the lapse of a long period of time. Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976), conformed to, 538 F.2d 1131 (5th Cir.1976).
Chapter 95, Florida Statutes, provides for such periods of limitation as to various causes of action. Most such statutes of limitations run from the date the cause of action in fact first exists, or accrues, regardless of whether the person in favor of whom the cause of action exists (the plaintiff) knows of the existence of his injury or damage, or knows of the occurrence of the predicate set of causative facts, or knows the specific nature of the event causing the resulting injury or damage, or knows the exact identity of the particular person causing those facts, or knows the significance of those facts as entitling the plaintiff to bring an action at law to recover a judgment for damages. An example is the running of statutes of limitations against the cause of action for ejectment to recover real property in absentee owners against unknown persons unknown by the plaintiff to be in adverse possession of real property (§§ 95.12  95.18, Fla. Stat.).
In most situations an act which breaches a legal duty to others, whether ex contracto or ex delicto, almost immediately causes obvious or apparent injury or damage and the injured party can, and is held by law to use diligent effort to, discover the identity of the person causing the injury or damage and to pursue his legal remedy against the tortfeasor within the limitations period. However, in instances of professional malpractice, there is sometimes a long time lapse between a negligent act and the resulting injury or damage. In such a case the usual statute of limitations, running from the negligent act, could expire before the resulting injury or damage became apparent or obvious. To solve this problem in this class of cases, the legislature has provided that the statute of limitations commences not from the negligent act itself but from the time the "defect" (§ 95.11(3)(c), Fla. Stat.), "cause of action" (§ 95.11(4)(a), Fla. Stat.), or "incident giving rise to the action," is discovered or should have been discovered with the exercise of due diligence. This is called the "discovery rule" which has been adopted in many states by statute and in others by court decision.[2] By its very nature this rule, and its need and effect, declines in importance and applicability in a particular case with reduction in the time between the negligent act and any resulting apparent or "obvious"[3] injury or damage. Of course, instances of fraud or active concealment of the negligent act or the resulting injury are special cases.
In School Board of Seminole County v. GAF Corp., 413 So.2d 1208 (Fla. 5th DCA 1982), quashed sub nom., Kelley v. School Board of Seminole County, 435 So.2d 804 (1983), a school board hired an architect to design some new schools and a general contractor to build them. The general contractor hired a roofing contractor and the roofing subcontractor bought roofing material from GAF Corp. and installed it. The new roofs leaked. At the request of the school board the architect investigated the cause of the leaks and spent much time trying to get the roofing contractor and roofing material supplier to take responsibility for, and to fix, the leaky roofs. By the time the school board brought legal actions against the three parties "possibly" responsible for the leaks, viz: the roofing material supplier (GAF), the roofing subcontractor, and the architect (Kelley), the statute of limitations against the *1213 architect had run when measured from the time it was obviously known by the school board that the roofs leaked. The majority opinion and the special concurring opinion in School Board of Seminole County reversed a summary judgment in favor of the architect. On certiorari review the supreme court disapproved and quashed the district court opinion in Kelley v. School Board of Seminole County, 435 So.2d 804 (Fla. 1983), and approved decisions from other district courts to the effect (1) that statutes of limitations which commence to run from the time the client discovers the defect, negligence, or cause of action involved do not "require knowledge of the specific nature of the defect causing an obvious problem before the statute of limitations commences to run" and (2) that the statutory "time period should not be extended by good faith attempts to remedy a defect." Kelley v. School Board, supra, 435 So.2d at 806 (emphasis added).
Parallels between Kelly v. School Board and this case:

 Items In Kelley In this case
1. Plaintiff Client (School Board) Client (Richards
 Enterprises)
2. Defendant Architect (Kelley) Trial Attorney
 (Swofford)
3. Action Malpractice Malpractice
4. Claimed Negligence In design of three roofs In defense of
 counterclaim at trial
5. Apparent or Roofs leaked Trial lost
 obvious injury
6. Professional's Statute of Limitations Statute of Limitations
 Defense
7. Limitation statute "the time the defect is "the time the cause of
 ran from discovered or should have action is discovered or
 been discovered with the should have been
 exercise of due diligence" discovered with the
 (§ 95.11(3)(c), F.S.) exercise of due
 diligence"
 (§ 95.11(4)(a), F.S.)
8. Possible causes (a) subcontractor's (a) trial judge's error,
 for client's negligent installation, or or
 injury
 (b) defect in roofing (b) lack of merit in
 materials, or client's cause, or
 (c) architect's negligent (c) attorney's
 designs negligence at trial
9. Client's actions had architect pursue fired attorney
 during period of roofing material (appellee) and hired new
 limitation manufacturer and attorney to move for new
 subcontractor to attempt trial and attempt to
 repair of roofs obtain reversal on
 appeal
10. Client's argument (a) client lacked precise (a) client lacked
 knowledge that leaky precise knowledge that
 roofs resulted from trial loss resulted from
 architect's negligence; attorney's negligence;
 (b) if subcontractor or (b) if trial court had
 roofing material been reversed on appeal
 manufacturer had repaired client would have
 roofs client would have suffered no damages as a
 suffered no damages as a result of attorney's
 result of architect's negligence;
 negligence;
 (c) damages are necessary (c) damages are
 part of cause of action  necessary part of cause
 cause of action not of action  cause of
 "discovered" action not "discovered"
*1214 and statute of limitations and statute of
 did not commence to run limitations did not
 until elimination of commence to run until
 other possible causes elimination of other
 (manufacturer's and possible cause (judicial
 subcontractor's error) by appeal
 negligence)
11. The Problem on the uncontested facts on the uncontested facts
 at what point had the at what point had the
 plaintiff discovered, or plaintiff discovered, or
 should be held to have should be held to have
 discovered, it had a cause discovered, it had a
 of action based on its cause of action based on
 architect's alleged its attorney's alleged
 negligence negligence
12. The holding in "the evidence shows that, the malpractice
 Kelley and the regardless of Kelley's complaint shows that
 proper holding attempts to repair the regardless of Richards'
 in this case roofs and regardless of attempt to obtain a
 the school board's lack reversal by appeal,
 of knowledge of a specific Richards knew more than
 defect, the school board 2 years [the period of
 knew more than 4 years limitation] prior to
 [the period of limitation] April, 1985 [the date
 prior to August, 1977 [the the malpractice action
 date the malpractice was filed] that
 action was filed] that something was wrong with
 something was wrong with the outcome of its
 the roofs of those three foreclosure trial. This
 schools. This knowledge knowledge meets the
 meets the discovery aspect discovery aspect of
 of subsection subsection 95.11(4)(a).
 95.11(3)(c)." 435 So.2d 804
 at 807.

The one principle different factor in Kelley not involved in this case (Swofford) is that during part of the time limitation period Kelley, the architect, was making "good faith attempts to remedy" the injury (leaky roofs) later claimed by the client to have resulted from Kelley's negligence; however, in this case the client immediately blamed the professional (Swofford) for the loss at trial and discharged him and used another lawyer to make "attempts to remedy" the injury (by appealing the lost trial) later claimed by the client to have resulted from the professional's negligence. However, the effect of this "continuing treatment" was held, in Kelley, to be an improper factor to toll the commencement of applicable statute of limitations. Therefore, this one principle distinction between Kelley and this case is immaterial.
In Watson v. Dorsey, 265 Md. 509, 290 A.2d 530 (1972), the court rejected a continuous representation (continuing treatment) doctrine as staying the statute of limitations (as did our supreme court in Kelley v. School Board) and held that the statute of limitations on a cause of action for legal malpractice of trial counsel ran during an appeal by that counsel because the client obviously had knowledge of the acts and omissions of counsel at trial. The court held (1) the clients' (the Watsons') cause of action accrued when they lost their ejectment case in the trial court, not when that decision was later affirmed on appeal, and (2) the legal malpractice complaint against *1215 the attorney (Dorsey) made it plain that the clients "must be charged with knowledge that they had been wronged as soon as the ejectment case was decided against them." Watson, 290 A.2d at 553. This is exactly the situation in this case.
Interestingly, the same appellate panel in School Board v. GAF and in this case also decided Roberts v. Casey, 413 So.2d 1226 (Fla. 5th DCA 1982), rev. denied, 424 So.2d 763 (Fla. 1982). Roberts, a mother attended by Dr. Casey, gave birth to a healthy baby in a hospital. Two months later the child was severely sick from bacterial meningitis and the mother was told by the doctor near the end of April, 1977, that it was "possible"[4] the child had contracted the disease at the hospital. Over two years later, on December 18, 1979, the mother and child filed a medical malpractice action against the doctor and hospital. Upholding a summary judgment in favor of the doctor this court held that the applicable two year statute of limitations (§ 95.11(4)(b), Fla. Stat.) began to run when
the plaintiff has notice of either the negligent act which causes the injury or the existence of an injury which is a consequence of the negligent act... . Here, appellants discovered in late April, 1977, that their child's condition may have been caused by a negligent act... . The fact that appellants were not aware that Dr. Casey's treatment may have contributed to the child's condition does not alter the result as appellants had been put on notice of an invasion of their legal rights at this time.
Roberts v. Casey, 413 So.2d at 1229 (emphasis added).
In reversing the summary judgment in favor of attorney Swofford in this case the majority relies on Adams v. Sommers, 475 So.2d 279 (Fla. 5th DCA 1985), a legal malpractice case in which this court reversed a judgment entered in favor of an attorney based on the same two year statute of limitations involved in this case (§ 95.11(4)(a), Fla. Stat.). In connection with an estate planning, Sommers, an attorney, in 1977 advised his client, Mrs. Adams, to execute a mortgage on her house in favor of a trust for her children and prepared a satisfaction of mortgage and told the client that she could use the satisfaction anytime to cancel the mortgage. Later the client, during a divorce proceeding, filed the mortgage satisfaction of record but a guardian ad litem for her children attacked the satisfaction and it was held invalid and the mortgage was held valid by an order dated January 15, 1980. The client appealed by herself without an attorney and lost the appeal in this court in October, 1981. The client filed a malpractice action against the attorney on September 23, 1983. The attorney did not contend the statute of limitations ran from his alleged negligent advice given in 1977 but that the statute did run from the trial court order of January 15, 1980, declaring the satisfaction invalid and the mortgage valid, because that action put the client on notice that the attorney's alleged advice was erroneous. On this basis the trial court granted a summary judgment for the attorney. This court reversed holding that while the client was certainly aware that the satisfaction of mortgage had been set aside by the January 15, 1980 order, that knowledge was not dispositive because it was, at that point, only notice of the attorney's "possible[5] negligence" and that the question of the validity of the mortgage satisfaction
was not finally resolved until October, 1981 when this court rendered its decision and no further review was sought. Had Judge Salfi's order been reversed by this court and the satisfaction of mortgage been upheld, Adams would not have had a legal malpractice action on that ground. Since the trial court's order was appealed, Adams' claim was in effect still viable and thus the statute of *1216 limitations would not have run from January 15, 1980.
Adams v. Sommers, 475 So.2d at 281.
In this case this court should either distinguish Adams v. Sommers or recede from that case. The alleged negligence of attorney Sommers was in giving his client Adams erroneous legal advice as to Adams' legal right to revoke the trust and satisfy the mortgage she placed on her home in favor of the trust. Therefore, the trial court's ruling declaring the satisfaction invalid and the mortgage valid and the appeal of that ruling somewhat involved the very question of the substantive correctness or incorrectness of the attorney's legal advice. The appellate court's decision on the appeal taken by Adams from the trial court's ruling on the invalidity of the satisfaction and the validity of the mortgage, was, arguably, some indication that Sommers' advice was faulty[6] and could be said to have assisted the client Adams to "discover" Sommers' negligence.[7] However, the outcome of the appeal by Richards in its case against its purchaser (Gokel), relating as it did to the purchaser's affirmative defense of fraud in the inducement of the sale, cannot be said to have in any way indicated to the client that Swofford was negligent in preparing the sale papers[8] or in defending at trial against the counterclaim for rescission. When the issue is the effect of a prior appeal on the commencement of a statute of limitations in a legal malpractice action, perhaps Adams v. Sommers and this case illustrate a basic difference between a case where the alleged legal malpractice relates to legal advice about a point of legal procedure or substantive law which is the subject matter of the appeal, as in Adams, and a case where the alleged legal malpractice relates to the conduct of a trial or some other matter that is not the subject of the appeal, as in this case.[9]
An interesting issue in this case, but not in Adams v. Sommers, is the relationship and effect, if any, upon the commencement of the running of a statute of limitations on a client's cause of action for negligence of an attorney allegedly occurring during a trial and a possible judicial error of the trial judge correctable by appeal. An attorney's negligence can cause the loss of a trial in which there is no reversible judicial error. Conversely, judicial error can cause the loss of a trial in which no counsel is negligent. Also a trial can be lost in which counsel is negligent and in which reversible judicial error also occurs. However, judicial error does not cause trial attorneys' negligence. Appellate review in civil cases can correct judicial error, but an appeal does not eliminate a trial lawyer's negligence nor does it extinguish a client's cause of action against an attorney for negligence in the conduct of a trial. It is at *1217 this point that the language quoted above from Adams v. Sommers is either inapplicable to legal malpractice occurring in the conduct of a trial or it is erroneous. Legally and logically there is no relationship between an appeal to correct a judicial error and the commencement of the statute of limitations on a legal malpractice based on a trial attorney's negligence occurring during the same trial because in fact there is no relationship between those two events and each is independent of the other.
A trial attorney is liable for negligence only when his negligence caused the loss of the client's case independent of correctable judicial error. If a client's case is lost solely because of judicial error and not because of an attorney's negligence, then, of course, the attorney is not guilty of negligence. When a trial is lost because of trial attorney's negligence the client always immediately suffers some damages, such as, in this case, Richards' loss of its bargain with its buyer and loss of the use of the property or money that would have been realized from a successful mortgage foreclosure, which damages are adequate to complete the establishment of a cause of action for legal negligence and commence the running of the statute of limitations whether the client promptly sues the attorney or opts to attempt to retain a reversal on appeal for real or claimed judicial error. Just as attorneys' negligence and judicial error are not mutually dependent, neither is the correction of both mutually exclusive. If the attorney is believed to have been negligent and the trial judge is believed to have erred, the client can sue the attorney for negligence and seek to correct judicial errors by appeal.
When appellant Richards lost its purchase money mortgage foreclosure action because of the buyer's successful counterclaim for rescission for fraud in inducement of the sale it was, or should have been, as plain and obvious to Richards that "something was wrong" as it was to the School Board in Kelley when the roofs leaked on its three new schools and as it was to Mrs. Roberts when Dr. Casey told her that it was "possible" her child contracted meningitis at the hospital when the child was born. On the date the plaintiff Richards learned it had lost its foreclosure action against its purchaser and discharged appellee, its trial attorney, and retained other counsel, it was apparent or "obvious" to Richards that it had suffered an injury and damages and Richards knew, or should be held to have known, if ever it would, that it was "possible" that its foreclosure action had been lost because of the negligence of its trial attorney. The two year statute of limitations (§ 95.11(4)(a), Fla. Stat.) ran from that date.[10]
The client's notice or knowledge of his attorney's negligent act can be shown as a matter of law. In Cherney v. Moody, 413 So.2d 866 (Fla. 1st DCA 1982), a client's malpractice claim was held to be barred by the statute of limitations because a letter the clients (the Cherneys) had sent to the attorney (Moody) expressing dissatisfaction with his legal representation clearly evidenced that the clients were on inquiry notice of the accrual of the cause of action against the attorney at that time. If, as is often stated, actions speak louder than words, Richards' discharge of Swofford immediately after losing its mortgage foreclosure action at trial and the hiring of other counsel for appeal more clearly evidence Richards' dissatisfaction with Swofford's trial work than does the Cherneys' letter to their attorney Moody.
Therefore the period of limitations expired before December 11, 1983, regardless of Richards' attempt to eliminate the result of the lost trial by claiming the trial judge erred and attempting to obtain a reversal on appeal, and by now arguing on appeal that a cause of action for negligence does not accrue until damages have occurred and until the case lost to its purchaser's counterclaim for rescission was affirmed on appeal, it had not suffered damages. If, in an identical case, rather than appealing, *1218 the client promptly sued its attorney alleging that the attorney's negligence at trial caused the case to be lost, could the attorney successfully defend that malpractice action on the ground that the client had no cause of action against the attorney until the client had first appealed on some ground and lost the appeal because, had the client appealed and obtained a reversal, the client would have suffered no damages as a result of the attorney's negligence, hence, until an appeal was taken and lost the client had no cause of action against the attorney for negligence occurring during the trial? Obviously, the attorney could not prevail on this misplaced argument and defense. Such a position is like arguing that in Florida until the current hurricane season is over, a homeowner has no cause of action against a negligent contractor for construction defects in a new home because, if a hurricane destroys the house, the defects will also be destroyed and the owner will have, in fact, suffered no damages as a result of the contractor's negligence. The answer to this argument is that although as is often stated, damages is a necessary element of a cause of action in negligence, it is only the existence of some damages that is necessary in order for the negligent action or inaction to become a cause of action and for the applicable statute of limitations to commence to run. All damages that may ultimately flow from a negligent act do not have to have occurred before a cause of action in negligence accrues, otherwise damage awards would never include reasonably ascertainable future damages.
In summary, the appeal of the adverse result in a civil trial in which a trial attorney may have been negligent and in which the trial judge may have also erred, may be a step in the nature of a mitigation of the damages that would otherwise have followed from the attorney's negligence alone. Nevertheless, when the appeal itself does not involve the issue of appellant's trial counsel's negligence the result of the appeal cannot cause the client to "discover" theretofore unknown negligence of his trial counsel. In this case the client, Richards, had no more reason to believe or to know that its trial attorney, Swofford, was negligent at trial after it lost its appeal in the mortgage foreclosure/rescission case than it had before the decision in that appeal was rendered. Neither the appeal in that action, nor the appellate court decision on that appeal, had anything to do with the client's discovery of any cause of action it may have had for legal malpractice against its trial counsel in that action and is therefore legally irrelevant to the legal issue of when the client discovered, or should with the exercise of due diligence have discovered (§ 95.11(4)(a)), that its trial attorney was negligent in that action. If Swofford were negligent in his trial work, that negligence was, or should have been, apparent to Richards when that trial was lost. It was and, therefore, this case should be affirmed. The majority decision of reversal in this case is contrary to Watson v. Dorsey, supra, and directly conflicts with Kelley v. School Board of Seminole County, supra, and Roberts v. Casey, supra.
NOTES
[1] See Richards Enterprises, Inc. v. Gokel, 430 So.2d 470 (Fla. 5th DCA 1983).
[2] See Annot., "Legal Malpractice-Statute of Limitations," 32 A.L.R. 4th 260, 292 (1984).
[3] Kelley v. School Board of Seminole County, 435 So.2d 804, 806 (Fla. 1983).
[4] "Dr. Casey said it was possible that Ann contracted the meningitis at Munroe, and he then advised her to consult an attorney." Roberts v. Casey, 413 So.2d 1226 at 1228 (emphasis added).
[5] Compare the word "possible" in Adams v. Sommers with the words "possible" and "may" in Roberts v. Casey, supra.
[6] Sommers' advice may not have been bad. The trial court may have erred and Adams may have lost her appeal because of her own ineptness at handling appeals.
[7] If the result of the appeal upholding the trial court would indicate that Sommers' advice was negligently given why, as Sommers argued, did the trial court's ruling not also indicate the negligence just as effectively as this court's decision?
[8] The legal malpractice complaint in this case alleges negligence not only in defending the counterclaim for rescission but also in preparation of a bill of sale and purchase money note and mortgage. The "damages" the client claims to have suffered in this case as a result of its attorney's alleged negligence in drawing the sale papers is that the client was unable to enforce its sale of a business to a third party because the trial court found as a matter of law and fact that the client fraudulently induced the sale. The only way the attorney's negligence in drawing the sale documents could have legally "caused" this result would be that the attorney failed to draw the sale documents in such manner that they could not be set aside even if their execution by the buyer was fraudulently induced by the seller. Because this cannot be done, and should not be able to be done, as a matter of law it is not negligence for a seller's attorney to fail to draft documents effectuating the sale of a business (bill of sale and purchase money note and mortgage) that cannot be held voidable and rescinded by a court of equity in an action by the buyer based on fraud by the seller in inducing the buyer to execute legal documents drawn by the seller's attorney.
[9] Pinkerton v. West, 353 So.2d 102 (Fla. 4th DCA 1977), cert. denied, 365 So.2d 715 (Fla. 1978), is another malpractice case involving legal advice.
[10] This date was within the time for filing a motion for new trial in the mortgage foreclosure action, i.e., not later than 10 days after the date of the filing of the judgment on December 1, 1981, in this non-jury action. Fla.R.Civ.P. 1.530(b).