Patrick KNIGHT, Appellant,

v.

Walter FURLOW, Appellee.

No. 87–1140.

District of Columbia Court of Appeals.

Argued Oct. 18, 1988.
Decided Feb. 6, 1989.

Eric M. Rome, for appellant.

Joseph F. Cunningham, with whom Valerie L. Tetro, Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge,[*] and FERREN and TERRY, Associate Judges.

FERREN, Associate Judge:

Appellant sued his lawyer too late, according to the trial court. He now contends the three-year statute of limitations for legal malpractice in the drafting of a will does not begin to run until resolution of an appeal sustaining the trial court's invalidation of the will. He does not dispute that he knew of the alleged malpractice near the time of the trial court's ruling, almost four years before he sued his lawyer. But he asserts that damages were uncertain, and thus the malpractice claim was not ripe, because the judgment had been stayed pending appeal. Applying the discovery rule, we conclude that the attorney's fees and court costs incurred in defending the will and appealing its invalidation constituted sufficient injury for the statute of limitations to bar a legal malpractice action when the plaintiff knew, or had reason to know, of his attorney's alleged malpractice well over three years before he filed suit. Accordingly, we affirm.

I.

The following facts are undisputed. In 1980, appellee Furlow drafted a will for appellant Knight's father, who died in 1981. Knight, the primary beneficiary under the will, offered it for probate in Florida, where it was contested by his brother. On May 6, 1983, the Circuit Court for Broward County, Florida, held that Knight had exer-

---

[*] Judge Rogers was an Associate Judge of the court at the time this case was argued. Her status changed to Chief Judge on November 1, 1988.

cised undue influence over his father and invalidated the will. Less than two weeks later, on May 17, Knight wrote a "settlement" letter to Furlow asserting that Furlow had an "obligation" to put him in the same position he would have achieved if the will had been upheld. Knight added that he did not believe the will could be reinstated on appeal. On May 19, Furlow responded in a letter to Knight that he was not interested in Knight's settlement proposal because he did not consider himself responsible for the outcome of the Florida litigation. Knight appealed the Florida court's decision and, on June 10, achieved a stay of the judgment pending appeal. On June 16, a lawyer hired by Knight wrote a letter to Furlow, stating that Furlow had committed malpractice in drafting the will and requesting Furlow to contact his malpractice insurance carrier so it could designate a representative for purposes of settlement negotiations. On April 18, 1984, the Florida Fourth District Court of Appeals affirmed the trial court's decision invalidating the will.

On April 17, 1987, a day less than three years after the Florida appellate court ruling, Knight filed suit against Furlow in Superior Court alleging malpractice. Furlow countered with a motion to dismiss pursuant to Super.Ct.Civ.R. 12(b)(6) on the ground that the three-year statute of limitations applicable to claims for legal malpractice had expired. *See* D.C.Code § 12–301 (1981). Furlow argued that the malpractice claim had "accrued" for purposes of the statute on or before May 6, 1983, the date on which the Florida trial court had overturned the will, and thus that Knight's claim was almost four years old when filed. In his opposition to Furlow's motion to dismiss, Knight argued that, because the Florida lower court judgment revoking the will had been stayed, his malpractice claim did not accrue until April 18, 1984, when the appellate court decision resulted in actual pecuniary loss of his rights under the will. Furlow's reply to Knight's opposition, to which he attached his own affidavit and exhibits of the correspondence described above, responded that Knight knew he had been damaged in May

1983, when he asked Furlow to put him "in the same position" he would have been in absent the will's invalidation. Furlow added that the full extent of one's damages need not be known for a cause of action to accrue. On August 3, 1987, the trial court issued an order granting Furlow's motion to dismiss. Knight filed a motion for reconsideration, which was denied.

## II.

Although the trial court rejected Knight's suit by "dismissing" his complaint, the court's consideration of the affidavits and exhibits attached to Furlow's pleadings converted Knight's motion to dismiss into a motion for summary judgment. *See* Super.Ct.Civ.R. 12(b); *American Ins. Co. v. Smith*, 472 A.2d 872, 874 (D.C.1984) (citations omitted); *Richardson v. Rivers*, 118 U.S.App.D.C. 333, 335, 335 F.2d 996, 998 (1964); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam). Summary judgment is a "remedy which is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." *Willis v. Cheek*, 387 A.2d 716, 719 (D.C.1978). On appeal, we conduct an independent review of the record; thus, "[o]ur standard of review is the same as the trial court's standard for initially considering a motion for summary judgment." *Rustin v. District of Columbia*, 491 A.2d 496, 500 n. 7 (D.C.) (citations omitted), *cert. denied*, 474 U.S. 946, 106 S.Ct. 343, 88 L.Ed.2d 290 (1985). Agreeing with Knight's assertion in his brief that "[t]he facts pertinent to this appeal are not in dispute," we affirm the trial court's judgment as a matter of law.

## III.

Legal malpractice claims in the District of Columbia must be filed within three years "from the time the right to maintain the action accrues." *See* D.C.Code § 12–301 (1981 & 1988 Supp.); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 994 (D.C.1978); *Fort Myers Seafood Packers, Inc. v. Steptoe & Johnson*, 127

U.S.App.D.C. 93, 94, 381 F.2d 261, 262 (1967), *cert. denied,* 390 U.S. 946, 88 S.Ct. 1033, 19 L.Ed.2d 1135 (1968). In ordinary negligence actions, a cause of action accrues for statute of limitations purposes at the time the injury actually occurs. *Burns v. Bell,* 409 A.2d 614, 615 (D.C.1979). However, in cases where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury, this court has applied the "discovery rule" to determine when the statute of limitations begins to run. *Bussineau v. President & Directors of Georgetown College,* 518 A.2d 423, 425–26 (D.C.1986) (citations omitted). Under this rule, a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing. *Id.* at 425.

We have applied the discovery rule to medical malpractice actions, *see, e.g., Burns,* 409 A.2d at 617; *Stager v. Schneider,* 494 A.2d 1307, 1316 (D.C.1985), and to a tort and contract action arising out of the allegedly deficient design and construction of a house, *see Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1202 (D.C. 1984). The United States Court of Appeals for the District of Columbia Circuit has rightly concluded that we would apply the discovery rule to legal malpractice claims. *See Byers v. Burleson,* 230 U.S.App.D.C. 62, 713 F.2d 856 (1983). We do so here, applying the discovery rule as recently articulated in *Bussineau.*[1]

On appeal, Knight does not dispute the fact that, more than three years before filing his claim, he knew or had reason to know that Furlow allegedly had committed malpractice in the preparation of Knight's father's will. Knight argues that his claim is still alive, however, because he did not suffer the injury necessary to support a legal malpractice claim until the Florida appellate court affirmed the judgment invalidating the will (which had been stayed pending appeal)—less than three years before he had filed suit. Knight further asserts that, although Furlow's alleged malpractice had caused him to pay court costs and attorney's fees as early as 1983, these costs and fees could not be deemed damages proximately caused by Furlow until the Florida appellate court had affirmed the invalidation of the will. According to Knight, absent certainty of damages attributable to failure of the will Furlow had drafted, he effectively had no malpractice cause of action to discover.

■ The law of several states supports Knight's claim that, when legal malpractice results in the loss of a case at trial, the plaintiff-client suffers no legally cognizable injury until the adverse judgment is affirmed on appeal. *See, e.g., Haghayegh v. Clark,* 520 So.2d 58 (Fla.Dist.Ct.App.1988); *Richards Enterprises, Inc. v. Swofford,* 495 So.2d 1210 (Fla.Dist.Ct.App.1986), *dismissed for lack of prosecution,* 515 So.2d 231 (Fla.1987); *Diaz v. Piquette,* 496 So.2d 239 (Fla.Dist.Ct.App.1986), *review denied,* 506 So.2d 1042 (Fla.1987); *Bowman v. Abramson,* 545 F.Supp. 227 (E.D.Pa.1982) (interpreting Pennsylvania law); *Woodruff v. Tomlin,* 511 F.2d 1019 (6th Cir.1975) (interpreting Tennessee law).[2] Considered

---

1. Many other jurisdictions apply the discovery rule to determine the time of accrual of legal malpractice claims. *See, e.g., Wettanen v. Cowper,* 749 P.2d 362 (Alaska 1988); *Amfac Distribution Corp. v. Miller,* 138 Ariz. 152, 673 P.2d 792 (1983) (en banc); *Budd v. Nixen,* 6 Cal.3d 195, 491 P.2d 433, 98 Cal.Rptr. 849 (1971) (en banc); *Richards Enterprises, Inc. v. Swofford,* 495 So.2d 1210 (Fla.Dist.Ct.App.1986), *dismissed for lack of prosecution,* 515 So.2d 231 (Fla.1987); *Northwestern National Ins. Co. v. Osborne,* 573 F.Supp. 1045 (E.D.Ky.1983), *aff'd,* 787 F.2d 592 (6th Cir.1986); *Cantu v. St. Paul Companies,* 401 Mass. 53, 514 N.E.2d 666 (1987); *Luick v. Rademacher,* 129 Mich.App. 803, 342 N.W.2d 617 (1983); *Jaramillo v. Hood,* 93 N.M. 433, 601 P.2d 66 (1979); *Wall v. Lewis,* 393 N.W.2d 758 (N.D. 1986) (also adopting continuous representation rule); *United States National Bank of Oregon v. Davies,* 274 Or. 663, 548 P.2d 966 (1976); *Bowman v. Abramson,* 545 F.Supp. 227 (E.D.Pa. 1982) (interpreting Pennsylvania law); *Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876 (Tenn. 1981).

2. *Amfac Distribution Corp. v. Miller,* 138 Ariz. 155, 673 P.2d 795 (Ct.App.), *aff'd,* 138 Ariz. 152, 673 P.2d 792 (1983) (en banc), on which appellant also relies, has been limited to malpractice occurring during the course of litigation. *See Arizona Management Corp. v. Kallof,* 142 Ariz.

together, these cases rest on two flawed premises. First, they erroneously presuppose that appellate court review of a trial court decision unfavorable to a client provides the first reliable indication of whether an attorney has violated a duty of care to the client. *See Richards,* 495 So.2d at 1211; *Haghayegh,* 520 So.2d at 59. Second, these cases improperly assume that a client suffers no injury from an attorney's malpractice other than the particular monetary loss at issue in the litigation. *See Diaz,* 496 So.2d at 240; *Bowman,* 545 F.Supp. at 229; *Woodruff,* 511 F.2d at 1020.

As to the first, we do not believe that resolution of an appeal is necessarily the definitive event triggering the required knowledge of injury, its cause, and related wrongdoing essential to the ripeness of a malpractice claim. In this case, for example, the evidence indicates that Knight was fully aware of Furlow's alleged malpractice within weeks of the Florida district court's judgment against him. A victory for Knight in the Florida appeal, moreover, would not necessarily have meant that Knight's malpractice claim against Furlow was groundless. A lawyer's negligence in drafting a will can result in litigation over the will which, though ultimately successful for the client, could have been avoided by adherence to a proper standard of care. While a successful appeal undoubtedly will reduce a client's damages, it will not necessarily prove that the lawyer's negligence did not injure the client. *But see Richards,* 495 So.2d at 1211.

■ We also do not accept the argument that a client sustains no actionable injury until affirmance on appeal of an adverse lower court judgment. We agree with Knight's contention that a claim for legal malpractice does not accrue until the plaintiff-client has sustained some injury from the malpractice. *See Wettanen v. Cowper,* 749 P.2d 362, 364 (Alaska 1988) (citations

omitted); *Wall v. Lewis,* 366 N.W.2d 471, 473 (N.D.1985); *United States National Bank of Oregon v. Davies,* 274 Or. 663, 668, 548 P.2d 966, 969 (1976); *Budd v. Nixen,* 6 Cal.3d 195, 200, 491 P.2d 433, 436, 98 Cal.Rptr. 849, 852 (1971). "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." *Budd,* 6 Cal.3d at 200, 491 P.2d at 436, 98 Cal.Rptr. at 852 (citations omitted). In the present case, however, Knight incurred expenses well before the disposition of the appeal. Furlow's alleged negligence caused Knight to pay attorney's fees and court costs both to defend his brother's challenge to the will in Broward County trial court, as well as to appeal the lower court's adverse ruling. In fact, Knight's very complaint in the present action seeks, among other awards and in addition to his share of the estate, "reasonable attorneys fees and costs incurred in the defense and appeal of the Will...."

"It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises." *United States v. Gutterman,* 701 F.2d 104, 106 (9th Cir.1983) (quoting *Bell v. Hummel & Pappas,* 136 Cal.App.3d 1009, 1016, 186 Cal.Rptr. 688, 694 (1982)); *see also Cantu v. St. Paul Companies,* 401 Mass. 53, 57–8, 514 N.E.2d 666, 668–69 (1987). " 'Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.' " *Luick v. Rademacher,* 129 Mich. App. 803, 807, 342 N.W.2d 617, 619 (1983) (quoting *Budd,* 6 Cal.3d at 201, 491 P.2d at 436–37, 98 Cal.Rptr. at 852). We conclude that attorney's fees and costs expended as a result of an attorney's alleged malpractice constitute legally cognizable damages for purposes of stating a claim for such malpractice.[3] *See Wettanen,* 749 P.2d at

64, 68, 688 P.2d 710, 714 (Ct.App.1984) (court refused to apply *Amfac* holding, which found no legal injury before completion of appellate process, to claim of alleged malpractice occurring during drafting of a settlement agreement).

3. The facts of this case do not raise, nor do we here address, the issue of whether the loss of the present use of an asset, pending appeal, because of an attorney's alleged malpractice can, by itself, constitute injury sufficient to trigger the statute of limitations.

**1236**

365 (plaintiff-client was injured when he retained new counsel and paid costs of appealing trial court order because of attorney's alleged negligence); *Cantu,* 401 Mass. at 58, 514 N.E.2d at 669 (legal fees expended by plaintiff to ameliorate harm caused by alleged legal malpractice considered legal injury); *Budd,* 6 Cal.3d at 201, 491 P.2d at 437, 98 Cal.Rptr. at 853 (plaintiff-client compelled to " 'incur and pay attorney's fees and legal costs and expenditures' " would sustain sufficient injury to run statute of limitations for legal malpractice claim). The fact that not all of a client's damages are finally ascertainable pending the outcome of an appeal may suggest in some circumstances that trial of the malpractice action should be stayed pending the appeal; it does not indicate that the client has not been injured earlier.

In summary, resolution of an appeal is not the critical event for ripeness of a legal malpractice claim. The key issue is client knowledge of some injury, its cause, and related wrongdoing. *See Bussineau,* 518 A.2d at 425. That knowledge may exist, as in this case, well before the resolution of an appeal. Or a client may not have reason to discover malpractice, in some instances, until years after an appeal has been resolved. We do not wish to encourage clients to rush prematurely into court, before their attorney's malpractice can be proved; but that problem is best addressed through proper application of the discovery rule, not through manipulation of the concept of legal injury.

Because the evidence indicates that Knight knew of, and sustained injury from, Furlow's alleged malpractice more than three years before filing the complaint, the statute of limitations bars Knight's prosecution of his legal malpractice claim.

AFFIRMED.