**David R. WILLIAMS, et al., Appellants**

v.

**Harold MORDKOFSKY, et al.**

No. 89–7133.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 21, 1990.

Decided April 17, 1990.

Robert M. Adler, Washington, D.C., for appellants.

Jacob A. Stein, with whom Stein, Mitchell & Mezines, Washington, D.C., were on the brief, for appellees.

Before BUCKLEY, Circuit Judge, ROBINSON, Senior Circuit Judge, and WILLIAM H. TIMBERS,* Senior Circuit Judge for the Second Circuit.

Opinion for the court filed by Circuit Judge TIMBERS.

TIMBERS, Circuit Judge:

Appellants in this legal malpractice action are David R. and Deanna M. Williams and the corporation they own jointly, Intermountain Broadcasting, Inc. ("Intermountain"). Appellees are Harold Mordkofsky, his law firm, Blooston & Mordkofsky, and several other partners of that firm.

Appellants appeal from an order entered on May 5, 1989, in the U.S. District Court for the District of Columbia, Oliver Gasch, District Judge, granting summary judgment in favor of appellees on all counts. The district court held that appellants' claims of negligence, breach of contract, breach of third-party beneficiary contract and breach of implied contract were time-barred by the three-year statute of limitations applicable to such claims in the District of Columbia. In addition, the court held that appellants' claim of "intentional breach of duty and conflict of interest" warranted dismissal on the merits.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

On appeal, appellants assert: (1) that the court erred in its construction of the District of Columbia statute of limitations and failed to draw relevant factual inferences in their favor, as it was required to do on appellees' motion for summary judgment; and (2) that all of the court's rulings with respect to the breach of duty count were erroneous.

For the reasons that follow, we affirm the district court's order in all respects.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. Since we are reviewing a summary judgment in favor of appellees, we view the evidence in the light most favorable to appellants.

David R. and Deanna M. Williams, residents of Utah, are husband and wife. For many years Mr. Williams owned and operated Industrial Communications, a company which provided common carrier mobile radio facilities licensed by the Federal Communications Commission ("FCC"). From 1969 to 1985, Harold Mordkofsky and his firm were counsel to Industrial Communications. The Williamses own and operate two other corporations which play a part on the instant appeal: appellant Intermountain and Utah Telecourier, Inc. ("UTI"). In the instant action, the Williamses sued in their capacities as shareholders of Intermountain and UTI.

The Williamses were successful in the common carrier field, but desired to move into the broadcast field. They apparently organized Intermountain for that purpose. In 1981, an opportunity arose for them; the FCC announced that it was accepting applications for a license to construct a television station in Salt Lake City, Utah. In connection with that application, Intermountain retained the law firm of Arent, Fox, Kintner, Plotkin & Kahn ("Arent Fox"), which was experienced in such matters. At the suggestion of Arent Fox, the Williamses included an "integration statement" in the application, i.e., a commitment to devote full-time to the management of the station. The FCC looks favorably on integration statements. The Williams' commitment to full-time management, however, probably existed independently of the expediency of the statement.

Intermountain filed the television application on March 10, 1981. In late 1982, while the application was still pending, an opportunity to construct a cellular radio facility arose. The Williamses, through UTI, decided to apply. They asked Mordkofsky to prepare the application. Mordkofsky knew that the UTI application, too, would be more likely to succeed if it contained a commitment that the Williamses would devote full-time to the facility. When Mordkofsky suggested the inclusion of an integration statement in the UTI application, Mr. Williams told him of their wish to be full-time broadcasters and asked if it would not be better to qualify the statement in the UTI application to reflect that wish. Mordkofsky told him that that would not be necessary; that they could always withdraw the UTI application if the FCC granted them the television license. He added that "two different versions" of the FCC would act on the applications so that the conflicting statements would not raise an issue of credibility. Based on Mordkofsky's statements, the Williamses filed the UTI application containing the conflicting integration statement. It is not disputed that Arent Fox received a copy of the UTI application soon after the November 8, 1982 filing date and did not react to the application. Pursuant to FCC rules, the television application was updated to include mention of the cellular application.

On August 21, 1984, Mr. Williams testified before Administrative Law Judge ("ALJ") Kuhlmann in support of Intermountain's television application. He restated his intention to devote full-time to the station's management. A competing applicant on cross-examination asked about the conflicting UTI integration statement. Mr. Williams replied that he always intended the television application to have priority. That evening, attorneys from Arent Fox told him that due to the conflicting statements the television application was in "deep trouble" unless he could explain the inconsistency to the FCC. Mr. Williams replied that the conflict was due to Mord-

kofsky's advice and that, in view of the long relationship between the Williamses and Mordkofsky, there would be no problem getting Mordkofsky to explain.

On November 5, the ALJ requested an additional hearing "to determine whether Intermountain misrepresented or lacked candor" in its failure to report the conflicting statements. Arent Fox did a substantial amount of work in the attempt to straighten out the confusion, for which it billed Intermountain a total of $7,235. The nature of the work was clearly designated in the materials sent to Intermountain during that period.

Prior to the hearing, Mordkofsky submitted a written declaration as requested but failed to state with complete candor that the conflicting UTI integration statement was inserted solely at his suggestion. At the hearing, on January 7, 1985, Mordkofsky essentially reiterated the statements from his declaration. As a result, his testimony was not helpful. On May 20, 1985, the ALJ issued an opinion denying Intermountain's application. He refused to give Intermountain credit for its integration statement and assessed a demerit for its perceived lack of candor.

Intermountain decided to appeal the decision to the FCC review board. In connection with the appeal, Intermountain again sought a statement from Mordkofsky explaining his actions in 1982. Mordkofsky at first refused unless the Williamses agreed to release him from liability. Later, after the Williams' new counsel advised him that he might be in violation of the Code of Professional Responsibility as a result of that refusal, he did issue a statement which took some responsibility for inserting the conflicting statement in the UTI application. Nevertheless, on December 10, 1985, the review board turned down Intermountain's appeal. Intermountain initially sought further review *en banc* by the review board but later withdrew the appeal in exchange for a settlement agreement with another applicant.

Appellants commenced the instant action on January 7, 1988, alleging five counts of malpractice: (1) negligence; (2) intentional breach of duty and conflict of interest; (3) breach of contract; (4) breach of third-party beneficiary contract; and (5) breach of implied contract. In granting appellees' motion for summary judgment on May 5, 1989, the district court dismissed counts 1 and 3–5, holding that they were brought more than three years after the cause of action accrued, and thus were barred by the relevant District of Columbia statute of limitations. D.C.Code § 12–301 (1981). As part of the summary judgment, the court dismissed count 2 on the merits.

This appeal followed.

## II.

In reviewing an appeal from a summary judgment, we assess the entire record de novo. *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1485 (D.C.Cir.1989). We view the record in the light most favorable to the nonmoving party. *American Federation of Gov't Employees v. Skinner*, 885 F.2d 884, 893 (D.C.Cir.1989). However, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Riddell, supra*, 866 F.2d at 1484–85 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III.

With that standard in mind, we turn to the question whether counts 1 and 3–5 of the complaint are time-barred.

### (A)

■ Subject matter jurisdiction here is premised on the diverse citizenship of the parties. 28 U.S.C. § 1332 (1988). It is uncontroverted that we look to the law of the District of Columbia for the rule of decision on this appeal. We apply the District of Columbia's law of limitations as well. *Kuwait Airways Corp. v. American Security Bank*, 890 F.2d 456, 460 (D.C.Cir. 1989). In the District of Columbia, the limitations period for count 1, which sounds in negligence, and counts 3–5, which sound in contract, is three years "from the time

the right to maintain the action accrues." D.C.Code § 12–301 (1981).

When the occurrence of a harmful act and the plaintiff's awareness of that act coincide, determination of the time of accrual is simple. Such coincidences in legal malpractice actions, however, are rare. Some time usually elapses before a client suffers from an attorney's wrongful act. For many years, therefore, the District of Columbia courts have applied an "injury" rule. Under the injury rule, "a claim for legal malpractice accrues when the plaintiff-client suffers *actual* injury, *not* when the act causing the injury occurs." *Byers v. Burleson*, 713 F.2d 856, 859–60 (D.C.Cir. 1983) (emphasis in original); *see also Hunt v. Bittman*, 482 F.Supp. 1017, 1020–21 (D.D.C.1980), *aff'd mem.*, 652 F.2d 196 (D.C.Cir.), *cert. denied*, 454 U.S. 860 (1981); *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 994–95 (D.C.1978).

Since there are occasions, however, when even the injury rule works an undue hardship on potential plaintiffs, the District of Columbia recently has adopted a "discovery" rule. In *Knight v. Furlow*, 553 A.2d 1232 (D.C.1989), the court stated that the discovery rule should apply "in cases where the relationship between the fact of injury and some tortious conduct is obscure at the time of injury." *Id.* at 1234.

The district court here held that the injury rule was better suited to the facts of this case and found that, since actual injury occurred no later than November 1984, the claims were time-barred.

Appellants argue strenuously that the discovery rule should apply because they were not aware at the time of injury that possible tortious conduct had occurred. We find that application of the rule as set forth in *Knight* would not change the result in any event. According to *Knight*, a cause of action under the discovery rule "accrues when the plaintiff has knowledge (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Id.* (citing *Bussineau v. President & Directors of*

*Georgetown Coll.*, 518 A.2d 423, 425–26 (D.C.1986)).

The first element, existence of actual injury, was satisfied by the accrual of $7,235 in legal fees in November 1984. The second element is satisfied by Mr. Williams' own admission that, at least as early as August 1984, he blamed his woes on Mordkofsky.

The third element is a closer call; a layman may not always be aware when unsatisfactory conduct by his attorney will give rise to a malpractice action. For that reason, we have cautioned that courts should be wary of finding against a plaintiff on this point on a defendant's motion for summary judgment. *Byers, supra,* 713 F.2d at 861–62 & n. 8. We are mindful of that caveat, but nevertheless we hold that there is no genuine issue of material fact on the question whether, in addition to the other *Knight* elements, appellants had some knowledge in November 1984 of Mordkofsky's wrongdoing. They knew that Mordkofsky had urged them not to qualify their time commitment in the UTI application, and that their Intermountain application likely was doomed as a result. One may properly infer that reasonable persons in appellants' position should have known in November 1984 that Mordkofsky's conduct constituted possible malpractice.

Appellants also assert with respect to this issue that "some evidence of wrongdoing" requires, at a minimum, adverse judicial action. In *Knight,* such action did bar plaintiff's suit. The test set forth in *Knight,* however, clearly contemplates a flexible, case-by-case approach. 553 A.2d at 1236. We agree with the district court that the Williamses had sufficient awareness of the nature of Mordkofsky's conduct by November 1984 on which to base a malpractice action.

(B)

■ Appellants next contend that, even if the statute of limitations was triggered in November 1984, application of the continuous representation rule tolled the limitations period until some time in 1985. The purpose of the continuous representation

rule is to toll the limitations period until the attorney-client relationship ends. While the courts of the District of Columbia have yet to adopt the rule explicitly, *Weisberg, supra,* 390 A.2d at 995, the district court and the parties here addressed the issue as though they had. We do the same and hold that, assuming the District of Columbia had adopted the rule, it would be inapplicable here.

The rule's primary purpose is to avoid placing a client in the untenable position of suing his attorney while the latter continues to represent him. For that reason, the rule is limited "to situations in which the attorney who allegedly was responsible for the malpractice continues to represent the client in that case." *Glamm v. Allen,* 57 N.Y.2d 87, 94, 439 N.E.2d 390, 393, 453 N.Y.S.2d 674, 678 (1982).

Appellants concede that they terminated appellees' formal representation of UTI in September 1984. They contend, however, that the policy underlying the rule—permitting attempts to repair the attorney-client relationship or at least to end it amicably—is broad enough to allow extension of the rule to any negotiations between an attorney and a former client that seek to repair damage done during the representation. That contention is not without support, *Gurkewitz v. Haberman,* 137 Cal.App.3d 328, 187 Cal.Rptr. 14, 17 (1982), but is distinctly a minority view. *E.g., Wettanen v. Cowper,* 749 P.2d 362, 365 (Alaska 1988); *Glamm, supra,* 57 N.Y.2d at 94, 439 N.E.2d at 393, 453 N.Y.S.2d at 678; *Wall v. Lewis,* 393 N.W.2d 758, 763 (N.D.1986); *Schoenrock v. Tappe,* 419 N.W.2d 197, 201 (S.D.1988); *McCormick v. Romans,* 214 Va. 144, 198 S.E.2d 651, 654–55 (1973). Moreover, the District of Columbia Court of Appeals has indicated that, were it to adopt the continuous representation rule, the toll would be limited to the period that the attorney was under retainer. *Weisberg, supra,* 390 A.2d at 995.

The facts of this case render the continuous representation rule particularly inapplicable. First, it is clear that the parties were in an adversarial position by November 1984. Second, appellants were not re-lying on Mordkofsky for legal advice; Arent Fox was then still under retainer. We decline appellants' invitation to apply the continuous representation rule here.

## IV.

■ We turn next to the second count of the complaint (intentional breach of duty and conflict of interest), which addresses Mordkofsky's conduct after November 1984. We briefly summarize that conduct, as alleged by appellants. Mordkofsky willfully made false statements to the FCC. Then he offered to recant the false testimony in exchange for a release from liability. He finally did recant only when it was suggested that disciplinary proceedings might be in order.

We observe in passing that, if Mordkofsky acted as alleged by appellants, his conduct raises serious concern, and likely violated provisions of the Model Code of Professional Responsibility. While the Model Code does not provide for a direct private malpractice action, violations of the Code certainly constitute evidence in an action at common law. *Waldman v. Levine,* 544 A.2d 683, 690–91 (D.C.1988). Since we affirm the court's holdings that Mordkofsky was not liable to Intermountain and that the Williamses did not sustain actionable injury, however, we do not reach the question of Mordkofsky's conduct.

### (A)

The court held that, since Intermountain was never a client of Mordkofsky, it had no standing to sue for legal malpractice. The District of Columbia has dispensed with the doctrine that third parties are barred for lack of privity from suing attorneys. *Teasdale v. Allen,* 520 A.2d 295, 296 (D.C.1987); *Needham v. Hamilton,* 459 A.2d 1060, 1061–63 (D.C.1983). The third party, however, must allege more than mere harm from the conduct in question. He must show in addition that he was "the direct and intended beneficiary of the attorney-client relationship." *Id.* at 1062–63.

Viewing the evidence in the light most favorable to appellants, we find that the

Williamses and Mordkofsky may well have reached an understanding that Intermountain was an intended beneficiary of Mordkofsky's representation of UTI. Certainly, Mordkofsky knew or should have known that Intermountain would be directly affected by his advice in regard to the conflicting integration statements.

Normally we would remand the matter to the district court to determine whether Mordkofsky's conduct was the proximate cause of Intermountain's injury. On the instant appeal, however, we need not do so since "the record permits only one resolution of the factual issue." *Pullman–Standard v. Swint,* 456 U.S. 273, 292 (1982). As the district court observed, the FCC review board left no doubt that its final decision to reject Intermountain's application was unrelated to Mordkofsky's statements. *In re Utah Television Assocs. Ltd. Partnership,* 102 F.C.C.2d 1470, 1480–81 (1985).

We therefore hold that there is no triable issue of fact on the question whether Mordkofsky's advice was the proximate cause of Intermountain's woes.

### (B)

■ The court permitted the Williamses, suing as individuals, to get past the threshold question of standing, holding that there was a genuine issue of material fact as to whether they were Mordkofsky's clients. We agree with the court that the existence of an attorney-client relationship normally is a question of fact, so that a genuine dispute would require resolution at trial. *Rosman v. Shapiro,* 653 F.Supp. 1441, 1445 (S.D.N.Y.1987) (citing cases). We further agree that the question whether the Williamses ever were clients of Mordkofsky does not require resolution, since they fail to allege cognizable injury as individuals.

The court found that the Williamses did not suffer cognizable injury because they failed to allege injury *as individuals,* but instead only as shareholders of Intermountain. We have held that, under normal circumstances, stockholders may sue for corporate injury only on a derivative basis,

*Cowin v. Bresler,* 741 F.2d 410, 414 (D.C. Cir.1984), but that special injuries will provide grounds for an individual suit. *Id.* at 415. Those grounds occur: (1) when the defendant owes a duty to the individual plaintiffs other than as shareholders; or (2) when the wrongs alleged were sustained by the plaintiff-shareholders rather than the corporation. *Id.*

The special injury alleged by the Williamses is loss of business opportunity due to the failed television application. That allegation is meritless. The Williamses chose to apply for the license through the corporate form of Intermountain. The business opportunity thus belonged to Intermountain and the Williams' losses were derivative. Had Intermountain declared bankruptcy, it is certain that the Williamses would not be so quick to request that we disregard the corporate form.

### V.

To summarize:

We hold that appellants' claims of negligence and breach of contract are barred by the three-year statute of limitations which governs such claims. Moreover, the continuous representation rule, even if applicable in the District of Columbia, would not toll the limitations period. Finally, we hold that appellants' claim of intentional breach of duty and conflict of interest also is barred. One party, Intermountain, could not prove that Mordkofsky was the proximate cause of its injury. The other parties, the Williamses, failed to allege cognizable injury.

*Affirmed.*