Rick **RANIER**, Appellant,

v.

**STUART AND FREIDA, P.C. and David Hammond, Appellees.**

No. 83766.

Court of Appeals of Oklahoma, Division No. 3.

Nov. 8, 1994.

**340**

Duke Holden, Oklahoma City, for appellant.

Charles F. Alden, Oklahoma City, for appellees.

### *OPINION*

HUNTER, Judge:

This case comes on appeal under the new accelerated procedure of 12 O.S.Supp.1994, Ch. 15, App. 2, Rule 1.203 from summary judgment granted to Appellees on the ground that Appellant's legal malpractice action was barred by the statute of limitations.

Appellant retained Appellees to represent him in a lawsuit which was ultimately dismissed as time-barred on August 15, 1990. On September 12, 1990, Appellee Hammond mailed a letter to Appellant along with the judge's order, notifying him that the lawsuit

had been dismissed and an appeal had been filed. In the letter, Hammond stated: "I feel we have a good chance of getting the trial judge's decision over-turned (sic) on the appeal." The trial court's judgment was affirmed on appeal on February 5, 1992.

Appellant sued Appellees for legal malpractice on April 19, 1993. Appellees filed a motion for summary judgment, alleging the action was time-barred under 12 O.S.1991 § 95(Third) because more than two years had elapsed since Appellant's cause of action accrued. Appellant responded that the statute of limitations did not begin to run until the appeal was decided on February 4, 1992 and, alternatively, that Hammond's act of assuring Appellant by letter that they had a good chance of reversing the trial court's decision on appeal tolled the running of the statute of limitations. Upon summary judgment being granted to Appellees, we now review those allegations on appeal.

■ Appellant's action for legal malpractice, though based upon a contract of employment, was an action in tort governed by the two-year statute of limitations in 12 O.S.1991 § 95(Third). This limitation period generally begins to run from the date the negligent act occurred or from the date the plaintiff should have known of the act complained of.[1] However, *Funnell v. Jones* did not involve a delayed injury and the statute of limitations contained in § 95 does not begin to run until the cause of action "accrues."

■ In order to recover for the tort of negligence, Appellant was required to prove: (1) a duty by the attorney to protect him from injury, (2) a violation of that duty, and (3) injury as a proximate result of that violation of duty.[2]

As noted in *Funnell,* the limitation period applicable to actions for legal negligence is the two-year period provided under 12 O.S. 1991 § 95. According to that section, an action must be commenced within the relevant period "after the cause of action shall have accrued", or it is barred. The statute of limitations begins to run when the cause of action accrues. A cause of action ac-

---

1. *Funnell v. Jones,* 737 P.2d 105 (Okl.1985). 2. *Sloan v. Owen,* 579 P.2d 812 (Okl.1977).

crues when a litigant could first maintain an action to successful conclusion. *Sherwood Forest No. 2 Corp. v. City of Norman*, 632 P.2d 368 (Okl.1980); *National Bank of Claremore v. Jeffries [Jefferies]*, 126 Okl. 283, 259 P. 260 (1927).[3]

 Thus, the dispositive question here is whether Appellant's malpractice action accrued at the time the trial court dismissed the underlying action, starting the statute of limitations period, or whether the statute of limitations was tolled until after the case was finally determined adversely to Appellant on appeal. Oklahoma courts have never addressed this precise issue and a review of other jurisdictions shows a split of authority.

The Florida courts have squarely determined that a client's claim for legal or professional malpractice resulting from an adverse judgment does not begin to run until after the judgment is determined on appeal.[4] The courts reasoned in these cases that accrual in a legal or professional malpractice action does not occur until the underlying legal process has been completed on appellate review because until that time, one cannot determine if there was any actionable error by the attorney. As was explained in *Diaz v. Piquette:*[5]

> Most important, since it is plain that no claim would even have existed if the temporary results of the attorney's conduct had been reversed on appeal, this decision is in accordance with the salutary concomitant principles that premature, possible useless, litigation should be discouraged and that no cause of action should therefore be deemed to have accrued until the existence of redressable harm has been established.

Likewise, the Oregon courts also follow the "exhaustion of appeals" rule unless the plaintiff knows of the harm before the case is concluded.[6] In *U.S. National Bank v. Davies*, the Oregon Supreme Court held that a legal malpractice action accrues only when the plaintiff has both been damaged in fact and knows or should know that the defendant's negligence is the cause of the damage. It concluded that a statute of limitations should never start to run until the occurrence of harm. As the Court recognized, it is not always easy to ascertain at what point this awareness occurs:[7]

> In many situations the closeness of the legal questions involved would make it impossible to ascertain until the ultimate determination of the case whether it was brought as the result of the attorney's bad advice or whether it was the result of a misapprehension on the part of the party who sued as to his legal rights. In the present instance, if decedent had won the case brought against him, he would not normally be in a position to claim that negligent advice on the part of the present defendants was a cause of his expense of defense.

The Oregon Court of Appeals reasoned further in *Fliegel v. Davis:*[8]

> A client comes to a lawyer seeking the lawyer's expertise and is entitled to rely on that expertise in deciding what action to take. It is unrealistic to require a client to recognize that the lawyer's advice is bad, even after being sued for acting on it, until there no longer exists a realistic possibility that a court will hold that the advice was good ... We see no reason to encourage the interference with the attorney-client

3. *Boehler v. Shumake*, 853 P.2d 240, 243 (Okl. App.1993).

4. *Drake v. Simons*, 583 So.2d 1074 (Fla. 5th DCA 1991); *Peat, Marwick, Mitchell & Co. v. Lane*, 565 So.2d 1323 (Fla.1990); *Zakak v. Broida and Napier, P.A.*, 545 So.2d 380 (Fla. 2d DCA 1989); *Haghayegh v. Clark*, 520 So.2d 58 (Fla. 3d DCA 1988); *Richards Enterprises, Inc. v. Swofford*, 495 So.2d 1210 (Fla. 5th DCA 1986); *Diaz v. Piquette*, 496 So.2d 239 (Fla. 3d DCA 1986); *Adams v. Sommers*, 475 So.2d 279 (Fla. 5th DCA 1985); *Birnholz v. Blake*, 399 So.2d 375 (Fla. 3d DCA 1981).

5. 496 So.2d at 240.

6. See *Magnuson v. Lake*, 78 Or.App. 620, 717 P.2d 1216 (1986); *Godfrey v. Bick & Monte, P.C.*, 77 Or.App. 429, 713 P.2d 655 (1986); *Fliegel v. Davis*, 73 Or.App. 546, 699 P.2d 674 (1985); *Jaquith v. Ferris*, 297 Or. 783, 687 P.2d 1083 (1984); *U.S. National Bank of Oregon v. Davies*, 274 Or. 663, 548 P.2d 966 (1976).

7. 274 Or. at 668–669, 548 P.2d 966.

8. 699 P.2d at 675–676.

relationship and the rash of precautionary lawsuits that such a rule would produce.

An important factor in considering when the malpractice action accrues is whether the client continues to be represented by the alleged malpracticing attorney throughout the appeal of the underlying action or whether the client hires independent counsel to represent him, which might indicate the client's awareness of the harm suffered.[9] In its support for this continuous representation rule, the *Davies* court discussed the pitfalls of a rule which would force a client to sue, and stated:

> Plaintiff's decedent could have played it safe by filing an action against defendants immediately upon his being sued, in the event it subsequently appeared defendants' negligent advice was the cause of the action brought against him. However, it does not seem wise to encourage the filing of such provisional actions. More important, it could prove to be disastrous to a plaintiff's defense of the action brought against him and, thus, perhaps disastrous to his former legal advisor as well.

In the present case, plaintiff's decedent would have been defending one suit or action, claiming he had acted in conformance with the law, while simultaneously maintaining an action against defendants, claiming that he had not acted in conformance with the law because of faulty advice from defendants. Such an inconsistent position would have given rise to impeachment of decedent in his defense of the action brought against him, which certainly is not desirable from either of the present parties' point of view.[10]

The continuous representation rule has been consistently recognized even in jurisdictions which hold that the statute of limitations is not tolled pending final resolution of the underlying litigation.[11]

We recognize that there exists a line of authority which holds that the statute of limitations for legal malpractice actions is not tolled pending final resolution of the underlying litigation based on the theory that the client sustains injury as soon as his rights or assets are attacked by a third party.[12] We decline to adopt that rule, however, under these circumstances.[13]

9. See *Sawyer v. Earle*, 541 So.2d 1232 (Fla. 2d DCA 1989).

10. 274 Or. at 670, 548 P.2d 966.

11. In *Beesley v. Van Doren*, 873 P.2d 1280 (Alaska 1994), the statute of limitations in a legal malpractice case was not tolled pending final resolution of the litigation of the underlying claim, but the Court acknowledged that this rule might not be applicable when a client continues representation on appeal, forcing him to assert inconsistent positions in the two cases. In *Pleasant v. Celli*, 18 Cal.App.4th 841, 22 Cal.Rptr.2d 663 (2 Dist.1993), the statute of limitations on a malpractice action based on an attorney missing the statute of limitations period in the underlying suit was held to accrue when the adverse judgment was entered, but the question of an appeal was not raised. The Court stated that it is unproductive to require a plaintiff to file a precautionary legal malpractice action in anticipation of losing on an issue that may never arise, or if it does arise, may be resolved against the defendants in the underlying suit. In *Braud v. New England Ins. Co.*, 576 So.2d 466 (La.1991), the Louisiana Supreme Court held there was no continuing attorney-client relationship between former client and attorney which would have tolled commencement of statute of limitations but stated that if there had been, the statute of limitations would have been tolled.

12. See *Grunwald v. Bronkesh*, 131 N.J. 483, 621 A.2d 459 (1993); *Hennekens v. Hoerl*, 160 Wis.2d 144, 465 N.W.2d 812 (1991); *Richardson v. Denend*, 59 Wash.App. 92, 795 P.2d 1192 (1990); *Braud v. New England Ins. Co.*, 576 So.2d 466 (La.1991); *Belden v. Emmerman*, 203 Ill.App.3d 265, 148 Ill.Dec. 583, 560 N.E.2d 1180 (Dist. 1 1990); *Basinger v. Sullivan*, 540 N.E.2d 91 (Ind. App.3d Dist.1989); *Knight v. Furlow*, 553 A.2d 1232 (D.C.App.1989); *Rhoades v. Sims*, 286 Ark. 349, 692 S.W.2d 750 (1985); *Dixon v. Shafton*, 649 S.W.2d 435 (Mo.1983); *Chambers v. Dillow*, 713 S.W.2d 896 (Tenn.1986).

13. In *Grunwald*, the New Jersey Supreme Court held that damage to the client occurred when a purchaser refused to close on property and when the lower court held the sale agreement was unenforceable. The Court also found litigation costs constituted actual damages and stated that retroactivity on appeal of the underlying action does not alter the time when the injury or harm occurs for purposes of triggering accrual. In *Hennekens*, the client failed to exercise reasonable diligence by getting more information or contacting another attorney once a creditor threatened a foreclosure action against the client after the attorney's mistake. In *Richardson*, it was held that the pivotal factor which tolls the running of the statute of limitations is the absence of knowledge of the injury and that the damages are embodied in the judgment. There,

We find the better view expressed in *Dearborn Animal Clinic P.A. v. Wilson,*[14] wherein the Kansas Supreme Court stated:

> In a legal malpractice action in which there is underlying litigation which may be determinative of the alleged negligence of the attorney, the better rule, and the one which generally will be applicable under K.S.A. 60–513(b), is that the statute of limitations does not begin to run until the underlying litigation is finally determined. Ordinarily, as long as there is a good faith dispute, a layperson could not reasonably be expected to know that the dispute was caused by his attorney's negligence and the mere filing of an underlying lawsuit would not automatically trigger the running of the statute but would usually require a final determination of the action. However, the rule that underlying litigation must be finally determined before the statute of limitations begins to run cannot be arbitrarily applied in every case. If it is clear that the plaintiff in a potential legal malpractice action has incurred injury and if it is reasonably ascertainable that such injury was the result of the defendant attorney's negligence, then under K.S.A. 60–513(b) the statute begins to run at the time that it is reasonably ascertainable that the injury was caused by the attorney's malpractice even though the underlying action may not have been finally resolved.

A statute of limitations for a legal malpractice action may be tolled until resolution on appeal of the underlying case if the client has not become aware of the harm prior to the decision on appeal.[15] We come to this conclusion as a matter of common sense because in many situations, a client has no viable cause of action until he discovers whether his case is reversed on appeal.[16] We caution, however, that the resolution of the appeal is not necessarily always the critical event triggering ripeness of a legal malpractice claim, but rather it is knowledge of the injury, its cause and the wrongdoing. We emphasize that proper application of the discovery rule demands that the determinative factor be the client's knowledge of the injury, and each case must be decided under its own particular facts. If it appears that the client knew of the harm before the case is finally determined on appeal, the statute of limitations begins to run from the time the underlying injury occurs or upon the client's awareness of the alleged negligence.

Under these particular facts, it is clear that Appellant had no knowledge of any

the client's actual damage was that he was convicted of a crime when the underlying conviction was entered against him and he was forced to suffer injury of the consequences of the criminal conviction prior to the appeal of the judgment. In *Basinger*, the attorney missed the statute of limitations on a medical malpractice action. He then met with the clients and told them so and also told them they could sue him for his mistake but that they might be able to pursue the original claim through a declaratory judgment action. The clients met with another attorney but let the malpracticing attorney initiate the declaratory judgment action, which he lost on summary judgment. The clients ultimately hired another attorney to sue the original attorney for malpractice. In *Knight*, the client was aware of the alleged malpractice injury within weeks of the underlying judgment and had incurred cognizable injury prior to the appeal. In *Belden*, the client had knowledge of his injury on the day of settlement, but just did not know how much he was damaged and if the case had been reversed on appeal, he would still have incurred some of those damages. In *Rhoades*, it was held that the misconduct of an attorney triggers the statute of limitations. There, although the underlying litigation continued, the client hired a new attorney to go forward with the suit and the clients knew of the original attorney's malpracticing conduct at that time. In *Dixon*, the clients knew of the attorney's mistake when he informed them about it and were harmed when they had to hire new counsel despite the fact that the suit was not commenced against them until later. In *Chambers*, the client knew of the negligence when his initial lawsuit was dismissed and the dismissal was irremediable.

14. 248 Kan. 257, 806 P.2d 997, 1006 (1991).

15. See fn. 4, 6, and *Dearborn Animal Clinic P.A. v. Wilson,* supra; *Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42 (1990); *Semenza v. Nevada Medical Liability Ins. Co.,* 104 Nev. 666, 765 P.2d 184 (1988); *Neylan v. Moser,* 400 N.W.2d 538 (Iowa 1987); *Pancake House, Inc. v. Redmond,* 239 Kan. 83, 716 P.2d 575 (1986); *Amfac Dist. Corp. v. Miller,* 138 Ariz. 152, 673 P.2d 792 (1983); *Bonanno v. Potthoff,* 527 F.Supp. 561, 565 (N.D.Ill.1981).

16. See e.g. *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex.1991); *Pancake House, Inc. v. Redmond,* supra.

harm suffered until the underlying judgment was affirmed on appeal. The statute of limitations was thus tolled until the date of the appellate court opinion, when Appellant became aware of the harm suffered. Appellant's filing of his lawsuit on April 19, 1993 brought the action within the two-year statute of limitations period of 12 O.S.1991 § 95(Third). Because we find that Appellant's cause of action was timely filed, we need not consider Appellant's other claim regarding whether Appellees' letter gave Appellant false assurance of success in her lawsuit on appeal, such as to toll the statute of limitations.

Summary judgment is appropriately granted only when it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law.[17] Summary judgment on a statute of limitations defense in favor of the asserting party is appropriate only where the evidence is sufficient to support a finding of fact of a time-bar and where there is no dispute as to when the time the limitations period began to run or that the limitation period has expired.[18] The record does not support summary judgment in favor of Appellees on their statute of limitations defense and the trial court erred in granting summary judgment on this basis. Accordingly, the trial court's judgment is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

REVERSED AND REMANDED.

ADAMS, J., concurs.

GARRETT, Vice Chief Justice, dissenting:

In my view this decision attempts to overrule the Supreme Court's decision in *Funnell v. Jones,* 737 P.2d 105 (Okl.1985), and the Court of Appeal's decision in *Boehler v. Shumake,* 853 P.2d 240 (Okl.App.1993). I dissent.

---

17. *Flanders v. Crane,* 693 P.2d 602 (Okl.1984).

18. *MBA Commercial Construction v. Roy J. Hannaford Co., Inc.,* 818 P.2d 469 (Okl.1991).