# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Stokes-Craven Holding Corp., d/b/a Stokes-Craven Ford,
Appellant,

v.

Scott L. Robinson and Johnson McKenzie & Robinson,
LLC, Respondents.

Appellate Case No. 2013-001452

———————

Appeal From Clarendon County
George C. James, Jr., Circuit Court Judge

———————

Opinion No. 27572
Heard December 10, 2014 – Filed September 9, 2015

———————

## REVERSED AND REMANDED

———————

Andrew K. Epting, Jr. and Michelle Nicole Endemann,
both of Andrew K. Epting, Jr., L.L.C., of Charleston, for
Appellant.

Susan Taylor Wall and Henry Wilkins Frampton, IV,
both of McNair Law Firm, P.A., of Charleston and
Warren C. Powell, Jr., of Bruner Powell Wall & Mullins,
L.L.C., of Columbia, for Respondent.

———————

**JUSTICE BEATTY:** In this legal malpractice case, Stokes-Craven
Holding Corporation d/b/a Stokes-Craven Ford ("Stokes-Craven") appeals the
circuit court's order granting summary judgment in favor of Scott L. Robinson and

his law firm, Johnson, McKenzie & Robinson, L.L.C., (collectively "Respondents") based on the expiration of the three-year statute of limitations. Stokes-Craven contends the court erred in applying this Court's decision in *Epstein v. Brown*, 363 S.C. 372, 610 S.E.2d 816 (2005),[1] and holding that Stokes-Craven knew or should have known that it had a legal malpractice claim against its trial counsel and his law firm on the date of the adverse jury verdict rather than after this Court affirmed the verdict and issued the remittitur in *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 691 S.E.2d 135 (2010). We overrule *Epstein*, reverse the circuit court's order, and remand the matter to the circuit court for further proceedings consistent with this opinion.

## I.    Factual / Procedural History

Donald C. Austin filed suit against Stokes-Craven, an automobile dealership, after he experienced problems with his used truck and discovered the vehicle had sustained extensive damage prior to the sale. *Austin v. Stokes-Craven Holding Corp.*, 387 S.C. 22, 691 S.E.2d 135 (2010). In his Complaint, Austin alleged the following causes of action: revocation of acceptance, breach of contract, negligence, constructive fraud, common law fraud, violation of the South Carolina Motor Vehicle Dealer's Act (the "Dealer's Act"), violation of the South Carolina Unfair Trade Practices Act ("UTPA"), and violation of the Federal Odometer Act. Based on these claims, Austin sought actual damages, punitive damages, prejudgment interest, and attorney's fees and costs. *Id.* at 35, 691 S.E.2d at 141-42. Stokes-Craven was represented by Scott L. Robinson of Johnson, McKenzie & Robinson, L.L.C. throughout the trial proceedings. On August 16, 2006, after a three-day trial, the jury found in favor of Austin and awarded $26,371.10 in actual damages and $216,600 in punitive damages. *Id.* at 35, 691 S.E.2d at 142.

Austin and Stokes-Craven filed cross-appeals to this Court. Although Robinson was listed as counsel of record on the appellate pleadings, Stokes-Craven had employed attorneys with Young, Clement, Rivers, L.L.P. to represent it during the course of the appeal. On March 8, 2010, a majority of this Court affirmed the jury's verdict and held that: (1) there was no prejudicial abuse of discretion in admitting certain challenged testimony; (2) Austin offered proof of actual damages

---

[1] *See Epstein*, 363 S.C. at 381, 610 S.E.2d at 820 (rejecting the continuous-representation rule and affirming the dismissal of a legal malpractice case based on the expiration of the statute of limitations on the ground the three-year limitations period began to run on the date that the adverse verdict was entered against claimant).

in the amount of $26,371.10; (3) Austin failed to prove Stokes-Craven violated the Federal Odometer Act with the requisite intent to defraud him as to the mileage of the truck; (4) the verdicts of fraud and violation of the UTPA were not inconsistent; and (5) there was evidence to support the jury's award of $216,000 in punitive damages. *Id.* at 59, 691 S.E.2d at 154. This Court issued the remittitur on April 21, 2010.[2]

On August 16, 2010, Stokes-Craven filed a legal malpractice action against Respondents, alleging negligence and breach of fiduciary duty in trial counsel's representation of Stokes-Craven both prior to and during the trial. Specifically, Stokes-Craven alleged that trial counsel failed to: adequately investigate the facts of the case; prepare or serve written discovery; depose witnesses; obtain copies of the plaintiff's experts' curriculum vitas; prepare a pretrial brief, trial exhibits, voir dire, and requests to charge; preserve certain evidentiary issues for appellate review; notify Stokes-Craven's insurance carrier about the claims; and settle the case prior to the jury verdict. Based on these purported errors, Stokes-Craven claimed the jury returned the adverse verdict. Respondents generally denied the allegations and asserted several defenses, including that Stokes-Craven's claims were barred by the expiration of the three-year statute of limitations.

Subsequently, Respondents filed motions for summary judgment. Stokes-Craven filed a cross-motion for partial summary judgment and a motion to compel discovery of Respondents' professional liability policy applications for the years 2002 through 2012, all correspondence between Respondents and their malpractice insurer, and the billing records for computer research from any research provider used by Respondents for the years 2003 through 2006.

Following a hearing, the circuit court granted Respondents' motions for summary judgment on the ground Stokes-Craven's legal malpractice claim was barred by the expiration of the statute of limitations. In so ruling, the court concluded that Dennis Craven, as agent of Stokes-Craven, had notice of the claim on August 17, 2006, the date of the jury's adverse verdict. Referencing portions of Craven's deposition testimony, the court determined that Craven's testimony as a whole indicated that he was aware that he might have a legal malpractice claim

---

[2] In a related appeal, this Court (1) affirmed the circuit court's order that entered judgment in favor of Austin for his requested trial-level fees, and (2) remanded the matter to the circuit court to determine what amount of appellate and post-appellate fees should be awarded to Austin. *Austin v. Stokes-Craven Holding Corp.*, 406 S.C. 187, 750 S.E.2d 78 (2013).

against Respondents because Craven:  knew at the time of trial that counsel had not contacted and interviewed crucial witnesses prior to trial; was not shown the defendants' interrogatory responses until the day of trial; had not been prepared for cross-examination; and knew that counsel failed to settle the case despite the admission by Stokes-Craven that it "had done something wrong."  The court also noted that Craven acknowledged the jury's verdict presented a "serious problem" for Stokes-Craven.  Citing *Epstein*, the court found that Craven's knowledge of counsel's "shortcomings" and other "actionable errors" constituted evidence that Craven knew at the time of the verdict that he might have a claim against trial counsel.

The court also held that the doctrines of equitable estoppel and equitable tolling were inapplicable.  In terms of equitable estoppel, the court found "nothing in the record to support the conclusion that [Respondents] did anything to mislead Stokes-Craven" or that Robinson "engaged in any conduct to prevent Stokes-Craven from filing a malpractice action."  The court further found Stokes-Craven could not invoke equitable tolling because it failed to present evidence of an "extraordinary event" beyond its control that prevented it from timely filing its legal malpractice action.

Because the court granted Respondents' motions for summary judgment, it noted that it was unnecessary to rule on Stokes-Craven's motion to compel discovery.  However, in the event the decision on summary judgment was overturned on appeal, the court proceeded to rule on the motion.  Initially, the court found the correspondence between Respondents and their malpractice carrier was not discoverable as it was prepared in anticipation of or during litigation.  The court further determined that Stokes-Craven had not established the need for this information.  Although the court ruled Respondents' professional liability policy applications were discoverable, the court stated that any "issues of ultimate admissibility" would be left to the trial judge.

Stokes-Craven appealed the circuit court's order and filed a motion to argue against precedent pursuant to Rule 217, SCACR.  This Court granted Stokes-Craven's motion to argue against *Epstein*.

## II.    Standard of Review

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c),

SCRCP, which provides that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below. *Willis v. Wu*, 362 S.C. 146, 151, 607 S.E.2d 63, 65 (2004).

## III.    Discussion

### A.    Commencement of the Statute of Limitations

Stokes-Craven asserts the circuit court erred in holding as a matter of law that the statute of limitations began to run on the date of the adverse jury verdict against Stokes-Craven. Contrary to the circuit court's characterization of Craven's testimony, Stokes-Craven notes that Craven "repeatedly testified that, at the time of the trial, he had never been sued before, had never participated in litigation, and had no idea what an attorney should or should not do to prepare a case for trial." Based on this testimony, Stokes-Craven maintains that Craven did not know or could not have known that it might have a claim for legal malpractice on the date the verdict was rendered.

Stokes-Craven further argues the court erred in relying on *Epstein* as it is not only factually distinguishable from the instant case but is no longer viable precedent. Stokes-Craven requests that this Court overrule its decision in *Epstein* and adopt a bright-line rule that the statute of limitations in a legal malpractice case does not commence until the remittitur has been issued in the underlying lawsuit.

A claimant in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach. *Holmes v. Haynsworth, Sinkler & Boyd, P.A.*, 408 S.C. 620, 636, 760 S.E.2d 399, 407 (2014). Furthermore, a claimant is required to demonstrate that "he or she 'most probably would have been successful in the underlying suit if the attorney had not committed the alleged malpractice.' " *Doe v. Howe,* 367 S.C. 432, 442, 626 S.E.2d 25, 30 (Ct. App. 2005) (quoting *Summer v. Carpenter,* 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997)).

The statute of limitations for a legal malpractice action is three years. S.C. Code Ann. § 15-3-530(5) (2005) (stating the statute of limitations for "an action for

assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law" is three years); *see Berry v. McLeod,* 328 S.C. 435, 444-45, 492 S.E.2d 794, 799 (Ct. App. 1997) (concluding that section 15-3-530(5) of the South Carolina Code provides a three-year statute of limitations for legal malpractice actions). Under the discovery rule, the limitations period commences when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist. *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 300 S.C. 182, 186, 386 S.E.2d 798, 800 (Ct. App. 1989); *see* S.C. Code Ann. § 15-3-535 (2005) ("[A]ll actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."). "This standard as to when the limitations period begins to run is *objective* rather than subjective." *Burgess*, 300 S.C. at 186, 386 S.E.2d at 800. "Therefore, the statutory period of limitations begins to run when a person *could or should have known*, through the exercise of reasonable diligence, that a cause of action might exist in his or her favor, rather than when a person obtains actual knowledge of either the potential claim or of the facts giving rise thereto." *Id.*

"Statutes of limitations are not simply technicalities." *Kelly v. Logan, Jolley & Smith, L.L.P.*, 383 S.C. 626, 632, 682 S.E.2d 1, 4 (Ct. App. 2009). "On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Id.* "Statutes of limitations embody important public policy concerns as they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs." *Id.* "One purpose of a statute of limitations is to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his or her rights." *Id.* (citations omitted). "Another purpose of a statute of limitations is to protect potential defendants from protracted fear of litigation." *Id.* "Statutes of limitations are, indeed, fundamental to our judicial system." *Id.* (citation omitted).

### a.  *Epstein*

As noted by the circuit court and the parties, the key case in the instant dispute is *Epstein*. In *Epstein*, a jury returned a verdict for a wrongful death and survival action on February 18, 1998 against Dr. Franklin Epstein in a medical-malpractice action that arose out of the death of one of his patients following spinal surgery. *Epstein*, 363 S.C. at 374, 610 S.E.2d at 817. David Brown represented Epstein throughout the trial and filed a notice of appeal after the jury verdict. *Id.* at 374-75, 610 S.E.2d at 817. Although Brown remained counsel of record during

the appeal, Epstein was represented on appeal by Stephen Groves, John Hamilton Smith, and Steven Brown. *Id.* at 375, 610 S.E.2d at 817. The Court of Appeals affirmed the verdicts on July 31, 2000 in *Welch v. Epstein*, 342 S.C. 279, 536 S.E.2d 408 (Ct. App. 2000). *Id.* This Court denied Epstein's petition for a writ of certiorari in January 2001. *Id.*

On January 9, 2002, Epstein filed a legal malpractice claim against David Brown in which he alleged breach of fiduciary duty, negligence, and breach of contract. *Id.* In terms of specific deficiencies, Epstein asserted that Brown was negligent in failing to conduct an adequate investigation, failing to advise him to settle, forgetting to call expert witnesses, and adopting a defense contrary to Epstein's medical opinion. *Id.* at 376, 610 S.E.2d at 818. Brown moved for summary judgment on the ground that Epstein failed to commence the action within the applicable three-year statute of limitations. *Id.* at 375, 610 S.E.2d at 817. The circuit court found the majority of the damages alleged by Epstein stemmed from the adverse jury verdict, and the damages to Epstein's reputation resulting from the publicity were all damages suffered at the time of the verdict. *Id.* at 376, 610 S.E.2d at 818. The court concluded that, although these damages might have been mitigated by a successful appeal, they could not have been wholly eliminated by a reversal of the jury's verdict. *Id.* Accordingly, the circuit court ruled the statute of limitations began to run, at the latest, on February 18, 1998, the date of the jury's verdict. *Id.* at 375, 610 S.E.2d at 817. As a result, the court found the action was untimely and granted Brown's motion for summary judgment. *Id.* Epstein appealed the circuit court's order to this Court. *Id.*

Justice Waller, who was joined by Justices Moore and Burnett, affirmed the circuit court's order. *Id.* at 383, 610 S.E.2d at 821-22. In reaching this decision, the majority declined to adopt the continuous-representation rule, which permits the statute of limitations to be tolled during the period an attorney continues to represent the client on the same matter out of which the alleged legal malpractice arose. *Id.* at 380, 610 S.E.2d at 820. Instead, the majority chose to strictly adhere to the discovery rule set forth by the Legislature. *Id.*

The majority explained its decision by comparing a legal malpractice action to a medical malpractice action. Despite the "very legitimate policy rationales in favor of adoption of a continuous treatment rule" in medical malpractice cases, the majority noted that our appellate courts had declined to adopt it because the "Legislature [had] set absolute time restrictions for the bringing of medical malpractice actions in the statutes of repose both for medical malpractice and for persons operating under disability." *Id.* at 378, 610 S.E.2d at 819. The majority

also noted that "numerous jurisdictions" had refused to adopt the continuous-representation rule. *Id.* at 379, 610 S.E.2d at 819.

Additionally, the majority disagreed with Epstein's alternative argument that, absent applying the continuous-representation rule, the limitations period did not begin to run until the Court denied certiorari in January 2001. *Id.* at 380-81, 610 S.E.2d at 820. The majority explained that "those jurisdictions which decline to adopt the continuous representation rule tend to hold that a plaintiff may institute a malpractice action prior to the conclusion of the appeal." *Id.* at 380, 610 S.E.2d at 820.

The majority also rejected Epstein's argument that appealing the ruling in the medical malpractice action against him while filing a legal malpractice claim against Brown would cause him to argue inconsistent positions in two different courts. *Id.* at 381, 610 S.E.2d at 821. The majority maintained that "there are measures which may be taken to avoid such inconsistent positions." *Id.* at 381-82, 610 S.E.2d at 821.

Ultimately, the majority applied the discovery rule and found that Epstein "clearly knew, or should have known he might have had some claim against Brown at the conclusion of his trial." *Id.* at 382, 610 S.E.2d at 821. The majority reasoned that the damages claimed by Epstein were "largely those to his reputation" and the claims he raised in his Complaint were "primarily related to trial and pre-trial errors." *Id.* The majority also noted that trial counsel conceded during oral argument on the summary judgment motion that "some of the allegations down there, your Honor, were within the man's knowledge when the verdict came in." *Id.* at 382-83, 610 S.E.2d at 821. Finally, the majority referenced a letter from Epstein to his appellate attorney, Steven Groves, in which Epstein indicated that he would not deal with Brown and that he believed Brown's representation "was so egregiously lacking." *Id.* at 383, 610 S.E.2d at 821. The majority concluded that it was "patent Dr. Epstein knew, or should have known, of a possible claim against Brown long before this Court denied certiorari in January 2001." *Id.*

Chief Justice Toal dissented as she would have adopted "a bright-line rule that the statute of limitations does not begin to run in a legal malpractice action until an appellate court disposes of the action by sending a remittitur to the trial court." *Id.* at 383, 610 S.E.2d at 822. Although Justice Toal agreed with the application of the discovery rule, she disagreed with the majority's holding that Epstein should have known of the existence of a cause of action arising from

Brown's alleged malpractice at the conclusion of the trial. *Id.* at 384, 610 S.E.2d at 822. Instead, Justice Toal found "there was no evidence that [Epstein] [was] injured as a result of [Brown's] alleged malpractice until the court of appeals disposed of the case by sending a remittitur to the trial court." *Id.*

Justice Pleicones concurred in the majority's rejection of the continuous-representation rule and the retention of the discovery rule; however, he dissented as he believed that Brown should have been estopped from asserting the statute of limitations as a defense. *Id.* at 384, 610 S.E.2d at 822. Justice Pleicones pointed out that: (1) Brown affirmatively represented to Epstein that the adverse verdict had resulted from errors of law committed by the trial judge and, in turn, affected the jury's fact-finding role; and (2) Brown remained nominally as counsel to Epstein throughout the appeal of the verdict. *Id.* Justice Pleicones concluded that Brown's representations and his presence on the appellate team "reasonably induce[d] Epstein's forbearance." *Id.* at 384-85, 610 S.E.2d at 822.

### b. Propriety of *Epstein*

Our appellate courts for the past ten years have continued to rely on the decision in *Epstein*.[3] However, *Epstein* is not without its critics. *See* James L. Floyd, III, *South Carolina Tort Law: For Whom The Statute of Limitations Tolls−The Epstein Court's Rejection of the Continuous Representation Rule*, 57 S.C. L. Rev. 643 (2006). In this article, the author identified what he perceived to be fundamental flaws in the majority's analysis in *Epstein*. Specifically, the author found that the majority's reasoning and holding were questionable "because [of]: (1) the differences between the statute of limitations governing legal malpractice actions and the statute of repose governing medical malpractice actions, (2) the strength and applicability of the secondary authority upon which the *Epstein* court relied, and (3) *Epstein*'s operative facts." *Id.* at 654.

Although the author distinguished the secondary authority relied on by the majority and noted that *Epstein* was limited to its facts, his primary challenge was

---

[3] *See, e.g.*, *Holmes v. Haynsworth, Sinkler & Boyd, P.A.*, 408 S.C. 620, 760 S.E.2d 399 (2014) (citing *Epstein* and affirming the circuit court's ruling that legal malpractice claims were barred by the expiration of the statute of limitations); *Kelly v. Logan, Jolley & Smith, L.L.P.*, 383 S.C. 626, 682 S.E.2d 1 (Ct. App. 2009) (citing *Epstein* and affirming grant of summary judgment in favor of attorneys in legal malpractice action based on the expiration of the statute of limitations).

to the majority's reliance on the statute of repose in medical malpractice actions. Specifically, the author stated that:

> neither section 15-3-535 nor section 15-3-530(5) create a statute of repose governing legal malpractice actions. Instead, those sections create a general three-year statute of limitations in legal malpractice actions. This distinction may indicate the South Carolina Legislature is unwilling to create the same "absolute time limit" for legal malpractice actions which is observed in medical malpractice actions.

*Id.* at 656 (footnotes omitted). In addition to these distinctions, the author opined that the adoption of the "continuous representation rule would protect the sanctity of the attorney-client relationship" because a client should be able to rely on his attorney's advice, particularly where the attorney suggests filing an appeal of the underlying lawsuit. *Id.* at 658.

Notably, *Epstein* represents a minority position in this country as the majority of courts in other jurisdictions have adopted the continuous-representation rule. *See* 3 Ronald E. Mallen & Allison Martin Rhodes, *Legal Malpractice*, § 23:45 (2015) (discussing state cases which have adopted the majority and minority positions regarding the continuous-representation rule; identifying *Epstein* as within the minority position); George L. Blum, Annotation, *Attorney Malpractice−Tolling or Other Exceptions to Running of Statute of Limitations*, 87 A.L.R.5th 473, § 4 (2001 & Supp. 2015) (discussing state cases that have applied or found inapplicable the continuous-representation doctrine); *see also* George L. Blum, Annotation, *When Statute of Limitations Begins to Run on Action Against Attorney Based upon Negligence−View that Statute Begins to Run from Time Client Discovers, or Should Have Discovered, Negligent Act or Omission−Application of Rule to Conduct of Litigation and Delay or Inaction in Conducting Client's Affairs*, 14 A.L.R. 6th 1, § 8 (2006 & Supp. 2015) (collecting state and federal cases that applied or found inapplicable the discovery rule and highlighting *Epstein*).

The facts of the instant case present us with an appropriate opportunity to address the criticism and conflict that has arisen out of our decision in *Epstein*. As legislatively mandated, we begin our analysis with the well-established discovery rule. Pursuant to this rule, all legal malpractice actions must be commenced within three years after the claimant *knew or* by the exercise of reasonable diligence *should have known* that he or she had a cause of action.

Thus, a claimant seeking recovery for a legal malpractice claim is constrained by two constants: (1) filing the claim within the statute of limitations,[4] and (2) establishing the four requisite elements of his or her claim. As a result, a claimant must have knowledge of each element of the legal malpractice claim when it is filed. *See* 3 Ronald E. Mallen & Allison Martin Rhodes, *Legal Malpractice* § 23:14 (2015) ("Since a statute of limitations operates on remedies, the limitation period cannot start until the client has a cause of action that has accrued. Thus, 'accrual' means the existence of a legally cognizable cause of action.").

As evidenced by this case, the key question is when the claimant's cause of action accrues to trigger the running of the three-year statute of limitations. The answer to this question is complicated by the seemingly endless factual scenarios surrounding the underlying claim of a legal malpractice cause of action. For example, legal malpractice claims may stem from matters involving litigation or negotiated settlements while others may arise out of matters involving the probate of a will or a divorce. Further complicating the determination of when a cause of action accrues is if the claimant pursues an appeal of an unfavorable ruling.

Our decision regarding the accrual date must also take into consideration the preservation of the attorney-client relationship as well as the public policy that is fundamental to the efficient management of our judicial system. Clearly, if a client files a legal malpractice cause of action while the client is still represented by counsel during an appeal, the attorney-client relationship is compromised and there are simultaneous lawsuits advocating conflicting positions.

While the legal bases and policy reasons for adopting the continuous-representation rule are persuasive, we find its application may be problematic because we can foresee factual scenarios where it is unclear exactly at what point trial counsel ends its representation. Moreover, we acknowledge the merit of the remittitur rule espoused by the dissent in *Epstein* as it offers a clear and definitive date for the accrual of a legal malpractice cause of action. However, we decline to adopt such an unyielding rule because each case presents unique circumstances. Instead, we are guided by the position taken by the Oklahoma Court of Appeals in *Ranier v. Stuart & Freida*, 887 P.2d 339 (Okla. Civ. App. 1994).

---

[4] "A legal malpractice cause of action is governed by the applicable statute of limitations whether it sounds in tort, contract or fraud." 1 S.C. Jur. *Attorney & Client*, § 69 (Supp. 2015) (citing section 15-3-530 of the South Carolina Code).

In *Ranier*, appellant retained respondent attorney and his law firm to represent him in a lawsuit that was ultimately dismissed as time-barred on August 15, 1990. *Ranier*, 887 P.2d at 340. On September 12, 1990, respondent mailed a letter to appellant, which notified appellant that the lawsuit had been dismissed and an appeal had been filed. *Id.* In the letter, respondent stated that he believed they had a "good chance" of getting the trial judge's decision reversed. *Id.* On February 5, 1992, the trial judge's decision was affirmed on appeal. *Id.*

On April 19, 1993, appellant filed a legal malpractice action against respondent and his law firm. *Id.* Respondents filed a motion for summary judgment, alleging the action was time barred because more than two years had elapsed since appellant's cause of action accrued. *Id.* Appellant responded that the statute of limitations did not begin to run until the appeal was decided on February 5, 1992 and, alternatively, that his attorney's letter assuring him that they had a "good chance" of reversing the trial judge's decision on appeal tolled the running of the statute of limitations. *Id.* The trial court granted summary judgment in favor of respondents. *Id.*

On appeal, the Oklahoma Court of Appeals addressed "whether Appellant's malpractice action accrued at the time the trial court dismissed the underlying action, starting the statute of limitations period, or whether the statute of limitations was tolled until after the case was finally determined adversely to Appellant on appeal." *Id.* at 341. In analyzing this issue, the court noted that there was a split of authority in other jurisdictions regarding the appropriate rule. In particular, the court considered the exhaustion of appeals rule and the continuous-representation rule. *Id.* at 341-42. Ultimately, the court declined to adopt either rule and, instead, crafted a compromise position between these rules. *Id.* at 343.

Relying on a decision issued by the Kansas Supreme Court,[5] the Oklahoma Court of Appeals stated:

> *A statute of limitations for a legal malpractice action may be tolled until resolution on appeal of the underlying case if the client has not become aware of the harm prior to the decision on appeal.* We come to this conclusion as a matter of common sense because in many situations, a client has no viable cause of action until he discovers

---

[5] The Oklahoma Court of Appeals essentially adopted the rule enunciated by the Kansas Supreme Court in *Dearborn Animal Clinic, P.A. v. Wilson*, 806 P.2d 997 (Kan. 1991).

whether his case is reversed on appeal. We caution, however, that the resolution of the appeal is not necessarily always the critical event triggering ripeness of a legal malpractice claim, but rather it is knowledge of the injury, its cause and the wrongdoing. *We emphasize the proper application of the discovery rule demands that the determinative factor be the client's knowledge of the injury, and each case must be decided under its own particular facts.* If it appears that the client knew of the harm before the case is finally determined on appeal, the statute of limitations begins to run from the time the underlying injury occurs or upon the client's awareness of the alleged negligence.

*Id.* at 343 (footnotes omitted) (emphasis added).

Based on the particular facts of the case, the Oklahoma Court of Appeals concluded that appellant had no knowledge of any harm suffered until the underlying judgment was affirmed on appeal. *Id.* at 343-44. Because the statute of limitations was tolled until the appellate court issued its opinion, the Oklahoma Court of Appeals found that appellant's legal malpractice cause of action was timely filed. *Id.* at 344.

After carefully considering the rationale in *Ranier*, we conclude the rule adopted by the Oklahoma Court of Appeals comports with the discovery rule established by our Legislature and the purpose of the statute of limitations. Accordingly, we now adopt the following statement in *Ranier* as the statute of limitations standard for legal malpractice suits: "If it appears that the client knew of the harm before the case is finally determined on appeal, the statute of limitations begins to run from the time the underlying injury occurs or upon the client's awareness of the alleged negligence." *Ranier*, 887 P.2d at 343. We find the resolution on appeal rule provides a threshold limit to the tolling of the statute of limitations, eliminates the rigidity of the remittitur rule, and prevents arbitrary application of the rule with a case-by-case analysis. Furthermore, this rule advances the purpose of the statute of limitations, which is to punish plaintiffs who sleep on their rights, protect defendants from stale claims, and lend order to the judicial system.

Because the circuit court relied upon *Epstein* to hold that the statute of limitations began to run on the day of the jury's verdict, we reverse the court's grant of summary judgment without prejudice to either party's right to move for this

relief under our newly announced statute of limitations standard for legal malpractice suits.[6]

## B.      Motion to Compel Discovery

Having reversed the circuit court's grant of summary judgment in favor of Respondents, the question becomes whether the court erred in denying a portion of Stokes-Craven's motion to compel.  Stokes-Craven claims the circuit court erred in holding that Respondents' communications with their legal malpractice carrier were not discoverable.  In particular, Stokes-Craven contends the documents are not protected by the work-product doctrine because they were "prepared in the ordinary course of insurance business" and not in anticipation of litigation.  Additionally, Stokes-Craven maintains it has a "substantial need" for these documents and that it is unable to obtain equivalent information by other means.

A trial court's rulings in matters related to discovery generally will not be disturbed on appeal in the absence of a clear abuse of discretion.  *Dunn v. Dunn*, 298 S.C. 499, 381 S.E.2d 734 (1989).  An abuse of discretion occurs when the trial court's order is controlled by an error of law or when there is no evidentiary support for the trial court's factual conclusions.  *Sundown Operating Co. v. Intedge Indus., Inc.*, 383 S.C. 601, 681 S.E.2d 885 (2009).

"The attorney work product doctrine protects from discovery documents prepared in anticipation of litigation, unless a substantial need can be shown by the requesting party."  *Tobaccoville USA, Inc. v. McMaster*, 387 S.C. 287, 294, 692 S.E.2d 526, 530 (2010); *see* Rule 26(b)(3), SCRCP (stating, "a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for the trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means").  "Generally, in determining whether a document has been prepared 'in anticipation of litigation,' most courts look to whether or not the document was prepared

---

[6]  In view of our decision, we need not reach Stokes-Craven's contention that equitable doctrines precluded the application of the statute of limitations.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

because of the prospect of litigation." *Tobaccoville,* 387 S.C. at 294, 692 S.E.2d at 530.

We conclude the circuit court abused its discretion in ruling on Stokes-Craven's motion to compel production of communications between Respondents and their malpractice carrier because there was no evidentiary basis to support its factual conclusions. The court failed to conduct an in camera hearing to review the requested information and stated in its summary ruling that it had "not received a privilege log of these communications." Therefore, we find the court lacked sufficient information to determine whether the requested documents were prepared in anticipation of litigation and that Stokes-Craven had a substantial need of the materials in preparation of its case. Accordingly, we direct the circuit court on remand to conduct an in camera hearing, review the requested information, and issue a specific ruling.

## IV. Conclusion

We overrule *Epstein* and now hold that the statute of limitations for a legal malpractice action may be tolled until resolution on appeal of the underlying case if the client has not become aware of the injury prior to the decision on appeal. We find this rule comports with the discovery rule and effectuates the purpose of the statute of limitations. Because the circuit court relied upon *Epstein* to hold that the statute of limitations began to run on the day of the jury's verdict, we reverse the court's grant of summary judgment without prejudice to either party's right to move for this relief under our newly announced statute of limitations standard for legal malpractice suits. Additionally, we find the circuit court abused its discretion in denying Stokes-Craven's motion to compel the production of communications between Respondents and their malpractice carrier because there was no evidence to support the court's ruling.

Based on the foregoing, we reverse the circuit court's order and remand the matter for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

**PLEICONES and HEARN, JJ., concur. TOAL C.J., dissenting in a separate opinion in which KITTREDGE, J., concurs.**

**CHIEF JUSTICE TOAL:**   I respectfully dissent.  In determining when the statute of limitations period commences for legal malpractice actions, the majority adopts a subjective standard that is dependent on whether "the client has [] become aware of the injury prior to the decision on appeal."  Because the General Assembly explicitly provided for an objective standard, rather than the majority's new subjective standard, I write separately.

In South Carolina, the statute of limitations for legal malpractice actions is three years.  *See* S.C. Code. Ann. § 15-3-530(5) (2005); *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005); *Berry v. McLeod*, 328 S.C. 435, 444–45, 492 S.E.2d 794, 799 (Ct. App. 1997).  In determining when a legal malpractice action accrues, the General Assembly set forth the discovery rule, stating that such an action "must be commenced within three years after the person knew or *by the exercise of reasonable diligence **should have known** that he had a cause of action."* S.C. Code Ann. § 15-3-535 (2005) (emphasis added); *Burgess v. Am. Cancer Soc'y S.C. Div., Inc.*, 300 S.C. 182, 186, 386 S.E.2d 798, 800 (Ct. App. 1989) (citing *Rogers v. Efird's Exterminating Co.*, 284 S.C. 377, 325 S.E.2d 541 (1985)).  Thus, under this objective standard, the statutory period of limitations may begin to run before the client has actual, subjective knowledge of the potential claim or of the facts giving rise thereto.  *Burgess*, 300 S.C. at 186, 386 S.E.2d at 800; *see also Epstein*, 363 S.C. at 382, 610 S.E.2d at 821 ("This Court has recognized that, under the discovery rule, the statute of limitations begins to run when a person of common knowledge and experience would be on notice that a claim against another party might exist.  The fact that the injured party may not comprehend the full extent of the damage is immaterial." (citations omitted)).

Here, the majority states that in general, the statute of limitations for a legal malpractice action commences upon the final determination of the appeal in the underlying case.  The majority then outlines an exception to the rule, holding that the statute may begin to run earlier if the client has *actual* knowledge of the alleged negligence on the part of his lawyer.  *See supra* ("'If it appears that the client knew of the harm before the case is finally determined on appeal, the statute of limitations begins to run . . . upon the client's awareness of the alleged negligence.'" (quoting *Ranier v. Stuart & Freida, P.C.*, 887 P.2d 339, 343 (Okla. Civ. App. 1994)).  Thus, in effect, under the majority's rationale, the statute of limitations begins to run either when the client has actual knowledge of his lawyer's negligence, or at the conclusion of the appeal of the underlying case, whichever comes first.

While the majority claims its holding "comports with the discovery rule," in

reality, it adopts a subjective standard contrary to the dictates of the General Assembly. As the Oklahoma Court of Appeals explained in *Ranier*, in Oklahoma, the client's actual knowledge of the injury is the "determinative factor" in deciding when a legal malpractice action accrues in that state. 887 P.2d at 343. However, in South Carolina, the statute of limitations begins to run when the client knows *or should know* that he has a cause of action. *See* S.C. Code Ann. § 15-3-535. Although the majority espouses a number of policy reasons in support of its holding, those policy reasons cannot override the General Assembly's decision to mandate an objective standard.

I further disagree with the majority's contention that the client's actual knowledge is the only way the statute of limitations may commence prior to the final decision on appeal of the underlying case. Although my dissent in *Epstein* espoused a similar rule to the majority's current formulation, I have now reconsidered my position, and would adhere to the majority's holding in *Epstein*. While it is certainly possible that a client would not know of his lawyer's alleged negligence until resolution of the underlying appeal, it is equally possible that a client would know of the alleged negligence far earlier in the proceedings, such as after the jury verdict. *Cf. Epstein*, 363 S.C. at 376–77, 610 S.E.2d at 818 ("[T]he majority of the damages alleged by [the client] stemmed from the adverse jury verdict, and the damages to his reputation resulting from the publicity were all damages suffered at the time of the verdict. . . . [A]lthough these damages might be mitigated by a successful appeal, they could never be wholly eliminated by a reversal of the jury's verdict. Accordingly, . . . [the client] either knew, or should have known, of a possible claim against [his lawyer] by the date of the adverse verdict, such that the [statute of limitations] began to run on that date."). Therefore, in my opinion, the better practice is for the Court to determine, on a case-by-case basis, the date that the client knew or should have known that he could file a legal malpractice suit. *See* S.C. Code Ann. § 15-3-535. In other words, the Court should not automatically assume that resolution of the underlying appeal is the "magic date" in all cases.

Applying the *Epstein* rule here, I would find that regardless of the date of Dennis Craven's actual notice of the possible claim against his lawyers, there is no genuine issue of material fact regarding whether he *should* have known of the alleged malpractice on August 17, 2006, the date of the jury's adverse verdict in the underlying case. As the majority succinctly outlines, at that time, Craven knew, *inter alia*, that trial counsel did not contact or interview "crucial witnesses" prior to trial, and had failed to settle the case despite Stokes-Craven's admission that it "had done something wrong." Given those two allegedly critical mistakes, a reasonable

person of common knowledge and experience should have known at the date of the jury's adverse verdict that he had a claim against his trial counsel.

Therefore, I would find the statute of limitations began to run on August 17, 2006, and in filing its malpractice action in 2010, Stokes-Craven allowed the three-year statute of limitations to expire.  Accordingly, I would affirm the circuit court's ruling that the legal malpractice claim is time-barred.

**KITTREDGE, J., concurs.**